MATTER OF B——

In DEPORTATION Proceedings

A-5731074

*Decided by Board December 31, 1958*

**Crime involving moral turpitude—"Single scheme" not present where all of
the separate criminal acts were performed pursuant to over-all scheme to
embezzle funds.**

(1) Single scheme of criminal misconduct is not established where respondent
was convicted on separate counts of an indictment for passing forged checks
on two different occasions (August 1 and August 10, 1957) notwithstanding
general criminal intent to defraud victims so long as trust funds remained
available to respondent.

(2) The same conclusion is reached in respect to respondent's conviction on
separate counts of an indictment for larceny by trust committed at different
times (1955 and 1957) despite continuing over-all plan to embezzle funds
entrusted to respondent by the members of a partnership.

CHARGES:

Order: Act of 1952—Section 241(a)(5) [8 U.S.C. 1251(a)(5)]—Willful and
        unexcusable failure to file alien address report.
       Act of 1952—Section 241(a)(4) [8 U.S.C. 1251(a)(4)]—Convicted
        after entry of two crimes involving moral turpitude not arising
        out of a single scheme of criminal misconduct—larceny after trust,
        and uttering and passing forged check.

### BEFORE THE BOARD

**Discussion:** This is an appeal from the order of the special in-
quiry officer requiring respondent's deportation upon the grounds
stated above. The appeal will be dismissed.

Respondent, a 51-year-old divorced female, was born in China
and is a national of Great Britain. She was admitted to the United
States for permanent residence on July 11, 1929. She alleges that
she was outside the United States in 1935 with her husband, a
United States citizen, who was employed in the Canal Zone by
this government, and that she had a reentry permit when she re-
turned.

The criminal grounds of deportation are based upon the fact
that after her last entry, the respondent was convicted of crimes
involving moral turpitude. The issue is whether these convictions

were based on offenses "arising out of a single scheme of criminal misconduct." We hold that a single scheme did not exist.

Respondent was convicted in De Kalb County Superior Court, Georgia, for larceny by trust (2 counts) and passing a forged check (2 counts). A grand jury sitting in the December 1957 term of the Superior Court, De Kalb County, Georgia, handed down two indictments concerning the respondent. Indictment No. 7022, in two counts charged the respondent with larceny after trust. The first count charged that on August 3, 1955, and other unspecified times from January 1955 to December 1956, the respondent had converted to her own use money which she had been given by a partnership of 3 doctors for the use of the partnership. The sum involved was over a hundred-thousand dollars. The second count charged her with the same crime committed on June 28, 1957, and other unspecified times from January 1, 1957, to July 31, 1957, and involved over fifty-thousand dollars. The money described in the second count was the property of the partnership consisting of the same three doctors and a fourth doctor. This partnership used the name "The Decatur Clinic." Respondent was first tried on indictment 7022. She entered a plea of not guilty but was found guilty. On February 10, 1958, she was sentenced to 5 years on each count, the sentence to be served concurrently.[1]

---

[1] Larceny by trust occurs when one entrusted by another with property of the other to be used for the benefit of the other takes it with intent to steal. If larceny of an aggregate amount over a period of time is charged, it is not necessary to prove the theft of the whole amount charged (*Hagood* v. *State*, 5 Ga. Ap. 80, 62 S.E. 641). The State is permitted to give evidence showing the larceny of the full amount or part thereof at any time within the period of the statute of limitations. (There is no indication that the government relied upon acts committed on dates other than those set forth in the indictment.) Only one judgment can be given on such an indictment, and the judgment of conviction will enable the convicted person to enter a plea of autrefois convict in bar of a subsequent charge of larceny of either the full amount or any part thereof, irrespective of what evidence was introduced to obtain the conviction. If a judgment of acquittal is entered, the plea of autrefois acquit would be available (*Lewis* v. *State*, 82 Ga. Ap. 280, 60 S.E. 2d 663). If, however, the State set forth a series of conversions on designated dates and stated that the dates were of importance, convictions for larceny of trust could be obtained as to each date and separate punishment could be imposed on each count. (See *Martin* v. *State*, 73 Ga. Ap. 573, 37 S.E. 2d 411.) In the instant case, the date was not made a material element. The conviction obtained on the first count would bar any further conviction for larceny by trust based on any act occurring in the period specified. The conviction on the second count was apparently possible only because in the eyes of the law the money taken belonged to an entirely different entity. However, it would appear that the conduct described in count two was merely a continuation in the new partnership, of the unlawful course of action respondent had begun when employed by the original partnership.

Indictment No. 7023 charged the respondent with fraudulently passing a forged check on 2 occasions. Count 1 charged that she had drawn check No. 803 on The Decatur Clinic payable to C—— C—— in the sum of $65.69. The check was dated July 15, 1957, and was passed on August 1, 1957. Count 2 charged the passing of forged check No. 806 drawn upon the same bank and same account. The check was also dated July 15, 1957, but was passed on August 10, 1957. It was payable to J——H—— and was in the sum of $99.62. On the same day on which she was sentenced on the larceny counts she entered a plea of guilty to both counts in indictment 7023 for passing forged checks, and on the same date received a sentence of from 2 to 5 years on each count concurrently, the sentences to run concurrently with those imposed on indictment 7022.

If convictions arise out of a single scheme, the law prevents their use for deportation purposes where proceedings are brought on the ground that the alien had been twice convicted [section 241(a)(4), Immigration and Nationality Act; 8 U.S.C. 1251(a) (4)]. The problem of interpreting the phrase "single scheme" has been before us since the passage of the Immigration and Nationality Act of 1952 in which it appeared for the first time. The problem of interpretation is particularly difficult in a case such as this which involves continuing criminal misconduct. The pull of logic is to find a "single scheme" because there exists a planned scheme of crime involving the same criminal and victim. However, viewed with the insights gained from immigration history, we have found that Congress could not have intended that the words be given such a meaning, but rather that Congress intended to continue the protection which existed against the deportation of an alien who had been twice convicted for what was *essentially one act*.

Before the Immigration and Nationality Act, there existed this safeguard against the deportation of an alien who had been convicted of two offences arising out of one act or transaction; one act resulting in two convictions could not result in deportation. To make the alien deportable, he had to commit one crime for which he was convicted, and sentenced, confined, and then, despite the judicial deterrent, he again had to commit a crime for which he was convicted, sentenced, and confined. In the Immigration and Nationality Act, Congress removed the necessity for the intervening judicial action, and the necessity for the confinement. Had nothing further been said, a question would have existed as to whether two convictions arising from the commission of one act or episode should serve as a ground of deportation. By the use of the term "single scheme" Congress indicated that it still desired to retain the protection against the deportation of the alien whose conviction arose

out of one episode. The difficult question was whether Congress intended the protection to extend strictly to the situation where there was only one act affecting one person (counterfeiting and possession of counterfeit money) or whether Congress intended to protect the alien who had committed several acts, which, factually viewed, were in essence one act or episode (assault on home owner and burglary). We decided in favor of the broader construction because of the nature of deportation proceedings and the injunction of the courts to interpret the law in favor of the alien if a doubt existed. Therefore, we have found the existence of a single scheme in any situation in which essentially one episode existed (*Matter of J——*, 6 I. & N. Dec. 382; *Matter of Z——*, 6 I. & N. Dec. 167; *Matter of O——*, 7 I. & N. Dec. 539). We have found a number of situations which fit this description. Following are categories in which we find one episode or single scheme to exist:

(1) Where there is in fact one physical act affecting one person (counterfeiting and possession of counterfeit money; laceny and unlawfully receiving stolen goods, *etc.*), the law looks upon the same act from two viewpoints.

(2) Where there are a series of similar acts which occurred at "one time." (A, B, & C are robbed by the alien at the same time; A & B are indecently fondled at the same time. It is not a single scheme if the alien robs A and after completing this crime and escaping, shortly thereafter robs B in a separate episode of crime.)

(3) Where the acts occur within a comparatively short time of each other, involve the same parties, and the first act or acts are committed for the purpose of making possible the specific criminal objective accomplished by the last of the criminal acts (assault on home owner and robbery of his house). It is not a single scheme if the first acts are meaningful in and of themselves in that they have no relation to the completion of the second act which would have happened whether or not the first had taken place (submitting fraudulent bills for painting to the same person over a period of time; sale of illegal liquor to A on occasions two weeks apart). Intent to make a living by criminality does not make the separate unrelated acts a single scheme.

We shall now attempt to apply the rules to the convictions for passing forged checks on August 1, 1957, and on August 10, 1957. The situation does not fit any of the categories we have set forth. The third category which is the closest one, does not apply because each act of passing is meaningful in and of itself. There is no relation between the commission of the first act and the second. The second passing could have taken place whether or not the first passing had been performed. Nor does the passing of the two checks impress itself as being in other respects essentially the same criminal episode. The criminal purpose to pass the forged check described in count 1 had no relation to the specific criminal purpose to pass the check described in count 2. The existence of a general criminal intent to rob and rob as long as funds remained which could be reached, did not make a single scheme of what is in fact two separate unrelated acts. In situations similar to that

found in indictment 7023 where there was a continuing plan to commit similar actions on different occasions, but separate unrelated acts were performed, we have held that a single scheme does not result (*Matter of Z——*, 6 I. & N. Dec. 167). These convictions alone would support the order of deportation.

The larceny convictions resulted from acts one of which occurred on August 3, 1955, and the other on June 28, 1957. Here again, the situation falls into no category although the third category is the closest. There is no evidence that the criminal act which was planned and performed in 1955 was necessary to the accomplishment of the criminal act planned and performed in 1957. Each act is meaningful standing alone. The second act could have been performed even though the first never existed. (The time which elapsed between the two acts, the fact that two different partnerships were involved, and the rule that under an indictment worded such as is the one involved here, there can be only one conviction for larceny by trust arising out of the continuing course of conduct involving the same parties, make it clear that the second conviction was not for the doing of an act which had for its end the achievement of the specific criminal purpose which was described in the first count.) A single scheme is not present and the convictions for larceny by trust would by themselves satisfy the requirement of the law concerning two convictions for crimes involving moral turpitude not arising out of a single scheme.

The convictions for larceny or the convictions for passing would by themselves support an order of deportation. May the conviction for larceny be used with one for passing? We think it can. If a conviction for passing had been based on the same act which served as the basis for a larceny conviction, we would hold that both convictions arose out of a single scheme. It would not appear that such convictions are possible in Georgia (See, *Harris* v. *State*, 193 Ga. 109, 17 S.E. 2d 573; *Hadden* v. *State*, 196 Ga. 850, 28 S.E. 2d 71). However, we do not rely upon such a belief. This record does not show that identical transactions were relied upon to obtain convictions for larceny and for passing. The indictments for larceny specify different days than do the indictments for passing. The respondent doesn't allege that proof of unlawful acts varied from those charged in the indictments. Thus, even looking upon the passing of the forged checks as a step in the plan to embezzle or commit larceny by fraud, we find that the unlawful acts of passing are separate and independent from those of larceny. Whatever may have been the general purpose of the respondent in passing the checks, the passing was not necessary to complete the specific criminal purpose set forth in the larceny counts. The convictions for larceny may, therefore, be used with those for passing as the basis for deportation.

The failure to register is established. Respondent's explanation of the circumstances surrounding her alleged registration and her failure to register in previous years is difficult to accept. We believe the first charge is sustained. We find no prejudicial error committed in the conduct of the hearing or in the receipt of evidence.

**Order:** It is ordered that the appeal be and the same is hereby dismissed.