## MATTER OF PATAKI

### In Deportation Proceedings

### A-10973345

*Decided by Board June 2, 1975*

The respondent was convicted of manslaughter in the death of his mother-in-law under the Michigan Compiled Laws section 750.321. The wording in the indictment indicated voluntariness which made the crime one involving moral turpitude. The respondent was also convicted of the offense of assault with intent to do great bodily harm, in the stabbing of his wife, which act occurred a few minutes after the other crime. The immigration judge found the respondent deportable under the provisions of section 241(a)(4) of the Immigration and Nationality Act as an alien who had been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. However, the record showed that both crimes were committed within a few minutes of each other as the result of the same criminal impulse in the course of the same episode. This evidence is probative of the existence of a single scheme and the burden is on the Service to prove that they were not part of a single scheme. The Service did not meet this burden and the deportation order is overruled and proceedings terminated.

CHARGE:

Order: Act of 1952—Section 241(a)(4) [8 U.S.C. 1251(a)(4)]—Convicted of two crimes involving moral turpitude after entry, to-wit: Manslaughter (Michigan 1969) and Assault with Intent to do Great Bodily Harm (Michigan 1969).

ON BEHALF OF RESPONDENT: .
Martin I Reisig, Deputy Defender
Federal Defender's Office
600 Woodard Avenue
Detroit, Michigan 48226

ON BEHALF OF SERVICE:
Adolph F. Angelilli, Esquire
Trial Attorney

This case is before us on certification from an order of an immigration judge, finding the respondent deportable on the above-stated charge and directing his deportation to Hungary. The order of the immigration judge will be reversed and the proceedings terminated.

The record relates to a 37-year-old divorced male alien, a native and citizen of Hungary. Since the respondent was a refugee from the Hungarian Revolution, the Attorney General created for him, effective January 3, 1957, a record of admission to the United States for perma-

nent residence pursuant to the provisions of the Act of July 25, 1958 (P.L. 85–559). The respondent was convicted in the Circuit Court, Wayne County, Michigan, on February 9, 1979, upon his plea of guilty, of the offense of Manslaughter and of the offense of Assault with Intent to do Great Bodily Harm. He conceded the truth of the factual allegations of the order to show cause. However, he denied deportability on the basis of the following grounds: (1) that the convictions were not for two crimes involving moral turpitude, and (2) that both crimes arose out of a single scheme of criminal misconduct.

The offenses with which we are concerned occurred on the same day, September 10, 1969. The respondnet was charged with Assault with Intent to Kill and Murder in violation of M.C.L.A. 750.83. The court accepted a plea of not guilty on this charge and entered a plea of guilty to Assault with Intent to do Great Bodily Harm less than the crime of Murder under the Michigan Penal Code. The crime to which he entered a plea of guilty has been held by the Board to be a crime involving moral turpitude, *Matter of P—*, 3 I. & N. Dec. 5 (BIA 1947; A.G. 1947). In any event, counsel does not raise the question.

The respondent was charged with Murder in the first degree in violation of the Michigan Penal Code, Sec. 350.316, C.L. 1948. The court accepted a plea of not guilty to the Murder charge and entered a plea of guilty to the offense of Manslaughter under M.C.L.A. 750.321. After reading the record of conviction, including in its entirety the transcript of the respondent's testimony when the plea of guilty was entered, we agree with the immigration judge that the respondent entered a plea of guilty to Manslaughter and not to Involuntary Manslaughter as counsel for the respondent has suggested was done.

The presense or absence of moral turpitude must be determined in the first instance from consideration of the crime as defined by the statute. Voluntary manslaughter involves moral turpitude and involuntary manslaughter does not, *Matter of Lopez*, 13 I. & N. Dec. 725 (BIA 1971); *Matter of B—*, 4 I. & N. Dec. 493 (BIA 1951). We find that the statute on manslaughter under which the respondent was convicted, M.C.L.A. 750.321[1], makes no distinction between voluntary and involuntary manslaughter, *People v. Berles*, 30 Mich. App. 716 (1971); *People v. O'Leary*, 6 Mich. App. 115 (1967). The original indictment, which led to the respondent's plea of guilty to the lesser offense of manslaughter, charged the following: That on or about September 10, 1969, at Norwood, Allen Park, Michigan, the defendant "feloniously, deliberately, wilfully, with malice aforethought, and with premeditation, did kill and

---

[1] "Manslaughter – Any person who shall commit the crime of manslaughter shall be guilty of a felony punishable by imprisonment in the State prison, not more than fifteen (15) years or by fine of not more than seven thousand five hundred (7,500) dollars, or both at the discretion of the court."

murder one Rosalia Hadvina, Contrary to Sec. 750.316, C.L. 1948."
This case can be distinguished from *Matter of Lopez*, supra. In that case,
although it refers to unlawfully and feloniously killing the defendant by
shooting him with a gun, the wording of the charge in the indictment
does not indicate voluntariness. In this case, however, the indictment
indicated voluntariness by the allegation that the respondent "deliber-
ately, wilfully, with malice aforethought, and with premeditation did
kill . . . ." See *Matter of S—*, 2 I. & N. Dec. 559 (C.O. 1946; BIA 1946;
and A.G. 1947), a case in which an Ohio manslaughter statute was
considered. Hence, we find that the respondent was convicted of volun-
tary manslaughter, a crime involving moral turpitude.

Since both of the crimes were committed more than five years after
entry, a finding of deportability under section 241(a)(4) of the Act rests
upon whether or not the two crimes did or did not arise out of a single
scheme of criminal misconduct. We are not considering the affidavit of
Recorder's Court Judge R. Murphy, formerly the judge who sentenced
the respondent. The affidavit is an expression of legal opinion, made
some three years after sentencing, and is not binding on the federal
authorities, *Fitzgerald ex rel. Miceli v. Landon*, 238 F.2d 864, 867 (C.A.
1, 1956). However, in the Record of Sentence (Exh. 2) the Judge said:

"But the problem really is that in his rage when he pushed his mother-in-law down the
stairs, that rage didn't abate at that time. The rage continued to the point when he went
and got a knife and stabbed his wife, and I can only assume he intended to do her some
great injury." (Sentencing transcript at p. 5)

The Government has the burden of proving deportability by clear,
convincing and unequivocal evidence, *Woodby v. INS*, 384 U.S. 904
(1966). Additionally, it is the burden of the Service to establish that the
two crimes did not arise out of a single scheme of criminal misconduct,
*Wood v. Hoy*, 266 F.2d 825 (C.A. 9, 1959). By its introduction of the two
records of conviction, against different victims, the Government pre-
sented a prima facie case of deportability under the charge stated in the
order to show cause. However, the information elicited from the state-
ments made to the court on March 2, 1970 before imposition of sentence
shows evidence to the contrary. This evidence indicates that the crimes
for which the respondent was convicted stem from a marriage problem.
In his rage, the respondent pushed his mother-in-law down the stairs.
The rage continued to the point that a few minutes later, he went for a
knife and then stabbed his wife. We are satisfied that both crimes were
committed within a few minutes of each other as the result of the same
criminal impulse in the course of the same episode. This evidence is
probative of the existence of a single scheme. See *Zito v. Moufal*, 174 F.
Supp. 531 (N.D. Ill. 1959); *Jeronimo v. Murff*, 157 F. Supp. 808
(S.D.N.Y. 1957). The record before us gives equal support to inconsis-

tent inferences. Thus, the Government has not met its burden of proving that the two critical acts were not part of a single scheme of criminal misconduct.

**ORDER:** The immigration judge's order is overruled and the deportation proceedings are terminated.