# MATTER OF ADETIBA

## In Deportation Proceedings

### A-29571508

### *Decided by Board May 22, 1992*

(1) The Board of Immigration Appeals follows its historical approach as to what constitutes a "single scheme of criminal misconduct" within the meaning of section 241(a)(2)(A)(ii) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2)(A)(ii) (Supp. II 1990), by interpreting the statutory language to mean that when an alien has performed an act, which, in and of itself, constitutes a complete, individual, and distinct crime, he is deportable when he again commits such an act, even though one may closely follow the other, be similar in character, and even be part of an overall plan of criminal misconduct; such an approach recognizes that the statutory language was meant to distinguish cases where there are separate and distinct crimes, but they are performed in furtherance of a single criminal episode, such as where one crime constitutes a lesser offense of another or where two crimes flow from and are the natural consequence of a single act of criminal misconduct. *Pacheco v. INS*, 546 F.2d 448 (1st Cir. 1976), *cert. denied*, 430 U.S. 985 (1977), followed.

(2) Outside their respective circuits, the Board will not follow the more expansive interpretation of the statutory language in question as set forth in *Gonzalez-Sandoval v. INS*, 910 F.2d 614 (9th Cir. 1990); *Nason v. INS*, 394 F.2d 223 (2d Cir.), *cert. denied*, 393 U.S. 830 (1968); and *Sawkow v. INS*, 314 F.2d 34 (3d Cir. 1963).

(3) The separate crimes of which the respondent was convicted, namely using credit cards in the names of different people, with intent to defraud, and from which he obtained things of value for each card during a period of time, did not arise out of a "single scheme of criminal misconduct" within the meaning of section 241(a)(2)(A)(ii) of the Act, notwithstanding that the crimes were committed pursuant to an elaborate plan and the modus operandi was the same in each instance.

CHARGE:

Order: Act of 1952—Sec. 241(a)(2)(A)(ii) [8 U.S.C. § 1251(a)(2)(A)(ii)]—Crimes involving moral turpitude

ON BEHALF OF RESPONDENT:  
Pro se

ON BEHALF OF SERVICE:  
Lorraine L. Griffin  
General Attorney

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

In a decision dated January 3, 1992, an immigration judge found the respondent deportable under section 241(a)(2)(A)(ii) of the Immi-

gration and Nationality Act, 8 U.S.C. § 1251(a)(2)(A)(ii) (Supp. II 1990), as an alien who at any time after entry is convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct, and ordered him deported from the United States to Nigeria. The respondent has appealed from that decision. The appeal will be dismissed. The request for oral argument is denied. 8 C.F.R. § 3.1(e) (1992).

We first note that the immigration judge's decision incorrectly indicates that the respondent conceded deportability. He did not. He denied allegation 6 in the Order to Show Cause and Notice of Hearing (Form I-221), and the Order to Show Cause reflects that he denied the charge of deportability. Accordingly, the Board will review the record de novo. *See Matter of Lok*, 18 I&N Dec. 101, 106 (BIA 1981), *aff'd on other grounds*, 681 F.2d 107 (2d Cir. 1982) (holding that the Board is not bound by immigration judge's conclusions but rather has plenary power to review the record de novo and to make its own independent determinations on questions of law and fact). We also note that the respondent has offered the indictment from his criminal record on appeal and that the Immigration and Naturalization Service has not objected to its consideration.

The respondent, a native and citizen of Nigeria, entered the United States as a nonimmigrant visitor on October 27, 1980, and his status was adjusted to that of a lawful permanent resident on June 8, 1989. On October 15, 1990, he was convicted in the United States District Court for the Eastern District of North Carolina of the following offenses: four counts of fraud in violation of 18 U.S.C. § 1341 (1988); four counts of using fictitious names and addresses in violation of 18 U.S.C. § 1342 (1988); four counts of having falsely represented a social security number assigned by the Secretary of the United States Department of Health and Human Services in violation of 42 U.S.C. § 408 (1988); and three counts of fraud and related activity in connection with access devices in violation of 18 U.S.C. § 1029(a)(2) (1988). The conviction record was accepted into evidence at the hearing. On October 23, 1991, the United States Court of Appeals for the Fourth Circuit dismissed the respondent's direct appeal of his conviction. On November 29, 1991, the respondent filed a petition for rehearing with the Fourth Circuit.

For 11 of the counts, the respondent received a sentence of 3 years' imprisonment for each count, to run concurrently with each other. For the remaining four counts, he was placed on 5 years' probation. He was also assessed a fine of $2,000 and, as a condition of probation, was ordered to pay $71,386.19 as restitution. A monetary assessment of $750 was also imposed.

The respondent does not contest that the crimes of which he was

convicted involve moral turpitude. Fraud, as a general rule, has been held to involve moral turpitude. *Jordan v. De George*, 341 U.S. 223 (1951); *Matter of Flores*, 17 I&N Dec. 225 (BIA 1980).

If the respondent had been convicted of only a single crime involving moral turpitude committed within 5 years of "entry" into the United States, he would also be deportable under section 241(a)(2)(A)(i) of the Act. However, it appears from the record before us that the respondent's last "entry" occurred on October 27, 1980, and the crimes in question were committed between June of 1986 and May of 1987. The respondent's status was adjusted to that of a lawful permanent resident on June 8, 1989, but this does not constitute an "entry" for purposes of section 241(a)(2)(A)(i) of the Act. *See Matter of Connelly*, 19 I&N Dec. 156 (BIA 1984). As reflected by the Order to Show Cause, the respondent is solely charged with deportability under section 241(a)(2)(A)(ii) of the Act on the basis that at any time after entry, he has been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct.

The immigration judge found that the respondent's conviction was final for immigration purposes based on the conviction record and the dismissal of his direct appeal by the Fourth Circuit. Thus, he found the respondent deportable as charged and ordered him deported to Nigeria.

The facts regarding the circumstances of the respondent's crimes are not in dispute. The respondent applied for four credit cards in the names of four different individuals, using fictitious names, addresses, and social security numbers, and he was issued three of those cards. Upon receipt of these cards, the respondent, during various periods in 1986 and 1987, obtained or attempted to obtain things of an aggregate value of $1,000 or more for each card from Gulf Products Division, BP Oil, Inc. He also caused others to use the falsely obtained cards.

On appeal, the respondent contends that the immigration judge erred in concluding that his conviction was final for immigration purposes. However, it is well established that a conviction attains a sufficient degree of finality for immigration purposes when direct appellate review of the conviction has been exhausted. *See Matter of Ozkok*, 19 I&N Dec. 546, 552 n.7 (BIA 1988). Therefore, the possibility of a decision on any post-conviction motion that has been filed does not affect our finding that the respondent is deportable. *See Okabe v. INS*, 671 F.2d 863, 865 (5th Cir. 1982) (stating that post-conviction motions do not operate to negate finality of a conviction for deportation purposes, unless and until the conviction is overturned pursuant to such motions).

The respondent also asserts that his crimes arose out of a single scheme of criminal misconduct. He maintains that the courts in most

jurisdictions have rejected the Board's historical view of the issue, following the lead case of *Wood v. Hoy*, 266 F.2d 825 (9th Cir. 1959). The respondent emphasizes that the crimes of which he was convicted were all part of a single scheme which was elaborately planned. As evidence of the single scheme, the respondent points out that the indictment refers to him having "devised a scheme" and doing acts "in furtherance of the aforesaid scheme."

Section 241(a)(2)(A)(ii) of the Act provides as follows:

*Multiple criminal convictions.* - Any alien who at any time after entry is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, is deportable.

Neither the language of the above statutory provision nor the legislative history provides any assistance or insight into what Congress meant by the phrase "single scheme of criminal misconduct." *See Wood v. Hoy, supra; Matter of Vosganian*, 12 I&N Dec. 1 (BIA 1966). In the past, the Board has interpreted this language to mean that when an alien has performed an act, which, in and of itself, constitutes a complete, individual, and distinct crime, he is deportable when he again commits such an act, even though one may closely follow the other, be similar in character, and even be part of an overall plan of criminal misconduct. This interpretation, which we continue to view as the more reasonable one, recognized that the statutory language was meant to distinguish cases where there are separate and distinct crimes but they are performed in furtherance of a single criminal episode. *See Matter of B-*, 8 I&N Dec. 236 (BIA 1958); *Matter of M-*, 7 I&N Dec. 144 (BIA 1956); *Matter of J-*, 6 I&N Dec. 382 (BIA 1954); *Matter of Z-*, 6 I&N Dec. 167 (BIA 1954); *Matter of D-*, 5 I&N Dec. 728 (BIA 1954).

Under this analysis, there would exist a single scheme of criminal misconduct where one crime constituted a lesser offense of another, or where the two crimes flow from and are the natural consequence of a single act of criminal misconduct. Examples would be both possessing and uttering a counterfeit bill, *Matter of D-, supra*, or where a person breaks and enters into a store with intent to commit larceny and, in connection with that criminal act, also commits an assault with a deadly weapon. *Matter of D-, supra; see also Matter of B-, supra*, at 239.

The court in *Pacheco v. INS*, 546 F.2d 448 (1st Cir. 1976), *cert. denied*, 430 U.S. 985 (1977), appears to have most closely followed the same analysis. Stating that it was reluctant to adopt a definition of a "single scheme" that depends on a multitude of factors, the court concluded that to be a "single scheme," the scheme must take place at one time, meaning there must be no substantial interruption that would allow the participant to disassociate himself from his enterprise

509

and reflect on what he has done. The Board also finds this to be a reasonable approach, which comports with the analysis undertaken in our prior cases. *See, e.g., Matter of Pataki,* 15 I&N Dec. 324 (BIA 1975).

However, as pointed out by the respondent, the courts in the other jurisdictions that have confronted this issue have, to varying degrees, applied a more expansive interpretation of the language in question. *See Gonzalez-Sandoval v. INS,* 910 F.2d 614 (9th Cir. 1990); *Nason v. INS,* 394 F.2d 223 (2d Cir.), *cert. denied,* 393 U.S. 830 (1968); *Sawkow v. INS,* 314 F.2d 34 (3d Cir. 1963); *Wood v. Hoy, supra; see also Barrese v. Ryan,* 203 F. Supp. 880 (D. Conn. 1962); *Zito v. Moutal,* 174 F. Supp. 531 (N.D. Ill. 1959); *Jeronimo v. Murff,* 157 F. Supp. 808 (S.D.N.Y. 1957).

The respondent asserts that the Board should reverse the immigration judge's finding of deportability. We decline to do so and will continue to follow our approach outside of those jurisdictions noted above that have followed a more expansive interpretation. *See Matter of Cerna,* 20 I&N Dec. 399 (BIA 1991) (stating that authority from one circuit is not binding in another), *aff'd,* 979 F.2d 212 (11th Cir. 1992). The respondent asserts that all jurisdictions, aside from the First Circuit, have largely followed the analysis set forth in *Wood v. Hoy, supra.* In that case, the Ninth Circuit stated that the liberal language of the statute controls and that the phrase "not arising out of a single scheme of criminal conduct" is not intended to mean not arising out of a single criminal act. *Id.* at 830. Quoting *Chanan Din Khan v. Barber,* 253 F.2d 547 (9th Cir.), *cert. denied,* 357 U.S. 920 (1958), the court went on to state that in the absence of all evidence to the contrary, two complete crimes constitute two crimes not arising out of a single scheme of criminal misconduct. *Wood v. Hoy, supra,* at 830.

In that case, the respondent had been convicted of robbing a liquor store with three others, as well as robbing a drive-in theater with the same three people 3 days later. Although there were two complete crimes, the court held that there was the existence of evidence establishing a single scheme of criminal misconduct. *Id.* It agreed that the commission of two crimes may, by the very nature of the crimes themselves, or the time or circumstances of their commission, constitute reasonable, substantial, and probative evidence that they did not arise out of a single scheme of misconduct. However, the court concluded that this was not the case before it, where both crimes were robbery of the first degree, were committed by the same four people, and were committed within 3 days of each other, and in both crimes money was obtained from the victims by means of force and fear. *Id.* at 831. The court also emphasized that the participants had met 2 or 3

weeks before and had agreed at that time to participate in the two particular armed robberies. *Id.*

In 1990, the Ninth Circuit reaffirmed its analysis, holding in *Gonzalez-Sandoval v. INS, supra,* that where credible, uncontradicted evidence, which was consistent with the circumstances of the crimes, showed that the two predicate crimes were planned at the same time and were executed in accordance with that plan, the Government failed in its burden of establishing that the convictions did not arise out of "a single scheme of criminal misconduct." *Id.* at 616. In that case, the court found that two bank robberies occurring within 2 days of each other at the same bank arose out of a single scheme. *Cf. Leon-Hernandez v. INS,* 926 F.2d 902 (9th Cir. 1991).

However, we find this emphasis on whether the crimes are planned together and executed in accordance with that plan, as were the respondent's crimes, to be clearly unjustified. Such a contradiction of the statute would result in extreme absurdities, as it would render section 241(a)(2)(A)(ii) of the Act completely inapplicable in any case where an alien committed several crimes, provided he first had the foresight to formulate a broad plan of criminal misconduct, even if he had numerous opportunities to reflect and to disassociate himself from his criminal enterprise. *See Pacheco v. INS, supra; Matter of Z-, supra.* In the case before us, it is clear that the respondent did, in fact, commit his crimes pursuant to an elaborate plan. However, the emphasis on the planning for these crimes remains unjustified. It would allow for criminals to commit numerous similar crimes over a period of time, but still avoid deportability by having committed them according to a previous plan, while the criminal who committed the same crimes, but without any overall plan, would be subject to deportation.

We simply cannot conclude that Congress intended by the "single scheme" language to insulate from deportability individuals who formulate a plan at one time for criminal behavior involving multiple separate crimes, while making deportable those who commit only two such crimes without a plan. Accordingly, as noted above, except within the jurisdiction of a circuit court that has ruled otherwise, we will continue to interpret and apply this statutory phrase as we have historically. That is, the statutory exception refers to acts, which although separate crimes in and of themselves, were performed in furtherance of a single criminal episode, such as where one crime constitutes a lesser offense of another or where two crimes flow from and are the natural consequence of a single act of criminal misconduct. This case arose within the jurisdiction of the Fifth Circuit, which has not ruled on the interpretation of "single scheme" contained in section 241(a)(2)(A)(ii) of the Act. Therefore, the Board will apply its historical analysis to the respondent's crimes.

Under this analysis, it is of no consequence that the respondent's separate crimes of unauthorized use of a credit card with intent to defraud and the other related offenses were committed pursuant to an elaborate plan and that the modus operandi was the same in each instance. In *Matter of Z-, supra*, which involved two convictions for forging and uttering government checks, the Board interpreted the predecessor statute to section 241(a)(2)(A)(ii) of the Act to mean that when a criminal act accomplishes a specific and individual criminal objective of and by itself, then the alien who performs it becomes deportable when he commits another such act, provided both acts are followed by convictions. *Id.* at 170. In that case, this was said to mean that when the respondent received the money from the first forged check she accomplished a specific criminal objective, and when she received the money from the second forged check she accomplished another, distinct criminal objective. *Id.* Thus, the Board focused on actual receipt of the money by the alien as accomplishing the criminal objective. In the present case the respondent committed separate and distinct crimes each time he used a different credit card and obtained through its unauthorized use things of an aggregate value of more than $1,000. Therefore, with each use of a different card, the respondent accomplished his specific criminal objective when he obtained things of value resulting from the transactions with each card. At that point the specific criminal objective had been accomplished.

The further use of other credit cards to obtain additional things of value was not necessary to the success in obtaining things of value from any one individual card. A specific criminal objective had already been accomplished when he illegally used any one individual credit card and from that illegal use obtained things of value. The use of additional cards did not flow from and was not a natural consequence of a single act of criminal misconduct. After use of any one credit card, the alien had the opportunity to disassociate himself from his enterprise and reflect on what he had done. In sum, the Board finds that the Service has met its burden of establishing by clear, unequivocal, and convincing evidence that the respondent was convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct, and that he is accordingly deportable as charged. *Woodby v. INS*, 385 U.S. 276 (1966); 8 C.F.R. § 242.14(a) (1992).

We find the respondent's remaining contentions to be without merit.

Accordingly, the appeal will be dismissed.

**ORDER:** The appeal is dismissed.