# Matter of Saiful ISLAM, Respondent

*Decided November 18, 2011*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  In determining whether an alien's convictions for two or more crimes involving moral turpitude arose out of a "single scheme of criminal misconduct" within the meaning of section 237(a)(2)(A)(ii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(ii) (2006), the Board will uniformly apply its interpretation of that phrase in all circuits. *Matter of Adetiba*, 20 I&N Dec. 506 (BIA 1992), followed.

(2)  Where the respondent was convicted in two counties of forgery and possession of stolen property based on his use of multiple stolen credit or debit cards to obtain items of value from several retail outlets on five separate occasions over the course of a day, his crimes did not arise out of a "single scheme of criminal misconduct."

FOR RESPONDENT:  Parker Waggaman, Esquire, Woodside, New York

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Brandi M. Lohr, Assistant Chief Counsel

BEFORE:  Board Panel:  PAULEY, MALPHRUS, and MULLANE, Board Members.

PAULEY, Board Member:

In a decision dated March 25, 2011, an Immigration Judge found the respondent removable under section 237(a)(2)(A)(ii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(ii) (2006), as an alien convicted of two or more crimes involving moral turpitude not arising out of a single scheme of criminal misconduct, and ordered him removed from the United States.  The respondent has appealed from that decision.  The appeal will be dismissed.  The respondent's request for oral argument is denied. 8 C.F.R. § 1003.1(e)(7) (2011).

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Bangladesh who was admitted to the United States on July 4, 1998, as a lawful permanent resident. On October 21, 2008, he was convicted in the Columbia County Court,

New York, of fourth degree criminal possession of stolen property, namely, a credit or debit card, in violation of section 165.45(2) of the New York Penal Law, for which he was sentenced to 6 months' incarceration with 5 years of probation and was required to pay restitution and fees. He was also convicted on February 26, 2009, in Greene County, New York, of forgery in the third degree in violation of section 170.05 of the New York Penal Law, for which he was fined and sentenced to 3 years of probation to run concurrent with his prior sentence.

The Department of Homeland Security ("DHS") initiated removal proceedings against the respondent, charging that he is removable based on his convictions for crimes involving moral turpitude. At proceedings before the Immigration Judge, the respondent argued that he was not removable because his convictions arose out of a single scheme of criminal misconduct. He also asserted his eligibility for cancellation of removal under section 240A(a) of the Act, 8 U.S.C. § 1229b(a) (2006).

In his decision, the Immigration Judge stated that the respondent admitted that "on March 22, 2008, he used or attempted to use two different credit and debit cards belonging to [another individual] on five separate occasions to purchase goods." According to the Immigration Judge, the respondent "drove to four different locations and made five purchases over the span of a few hours." The locations where the cards were used were in two adjoining counties and involved different retail outlets, including Auto Zone and Walmart. During one transaction involving a stolen credit card, the respondent told the cashier that the card belonged to his girlfriend. The Immigration Judge found that the circumstances of the crimes indicated that the respondent "had time to dissociate himself and reflect on what he had done" between the commission of each offense.

Based on his findings, the Immigration Judge concluded that the respondent was removable as charged. He also determined that the respondent failed to properly complete his application for relief and ordered him removed.

## II. ISSUE

Forgery and possession of stolen property have long been considered to be crimes involving moral turpitude, and the respondent has presented no argument to the contrary. *See, e.g.*, *Matter of Serna*, 20 I&N Dec. 579, 585 n.10 (BIA 1992) (citing *Matter of Salvail*, 17 I&N Dec. 19 (BIA 1979)); *Matter of Seda*, 17 I&N Dec. 550, 552 (BIA 1980) (citing *Matter of A-*, 5 I&N Dec. 52 (BIA 1953)), *overruled on other grounds by Matter of Ozkok*, 19 I&N Dec. 546 (BIA 1988). We find no clear error in the findings of fact that the Immigration Judge relied on in support of his determination regarding

the respondent's removability.[1]    Therefore the sole issue on appeal is whether the respondent's convictions arose out of a "single scheme of criminal misconduct."  We review this issue of law de novo.  8 C.F.R. § 1003.1(d)(3)(ii) (2011).  In resolving the question, we find it appropriate to apply the interpretation of the "single scheme" language that we adopted in *Matter of Adetiba*, 20 I&N Dec. 506 (BIA 1992), rather than the more expansive interpretation expressed in *Nason v. INS*, 394 F.2d 223 (2d Cir. 1968), by the United States Court of Appeals for the Second Circuit, in whose jurisdiction this case arises.

## III.  ANALYSIS

In *Matter of Adetiba*, 20 I&N Dec. at 512, we concluded that separate crimes involving the unauthorized use of four different credit cards obtained in four different fictitious names, which resulted in harm to different victims, did not arise out of a "single scheme of criminal misconduct," even if they were committed pursuant to an elaborate plan and the same modus operandi was used for each offense.  In reaching this conclusion, we first noted that neither the language nor the legislative history of the statute provides any insight into what Congress meant by that phrase.  *Id.* at 509 (citing *Matter of Vosganian*, 12 I&N Dec. 1 (BIA 1966); *see also Nason v. INS*, 394 F.2d at 227 (stating that "there is no meaningful legislative history to illumine the meaning" of the phrase).

Reviewing our past precedents, we found the statutory language to mean that "when an alien has performed an act, which, in and of itself, constitutes a complete, individual, and distinct crime, he is deportable when he again commits such an act, even though one may closely follow the other, be similar in character, and even be part of an overall plan of criminal misconduct."  *Matter of Adetiba*, 20 I&N Dec. at 509 (citing *Matter of B-*, 8 I&N Dec. 236 (BIA 1958); *Matter of M-*, 7 I&N Dec. 144 (BIA 1956); *Matter of J-*, 6 I&N Dec. 382 (BIA 1954); *Matter of Z-*, 6 I&N Dec. 167 (BIA 1954); *Matter of D-*, 5 I&N Dec. 728 (BIA 1954)).  Thus, we determined that the single scheme exception "refers to acts, which although separate crimes in and of themselves, were performed in furtherance of a single criminal episode, such as where one crime constitutes a lesser offense of another or where two crimes flow from and are the natural consequence of a single act of criminal misconduct."  *Id.*

---

[1]  In his brief, the respondent states that he does not agree with all of the Immigration Judge's findings of fact.  However, he has not meaningfully challenged the fact findings or shown that any particular finding is not based on the evidence of record.

at 511.  As examples of a single scheme, we noted offenses where someone both possesses and utters a counterfeit bill or where a person breaks into a store with the intent to commit larceny and, in connection with that criminal act, also commits an assault with a deadly weapon.  *Id.* at 509.

In our analysis, we relied on the First Circuit's decision in *Pacheco v. INS*, 546 F.2d 448 (1st Cir. 1976), for the proposition that a single scheme "must take place at one time, meaning that there must be no substantial interruption that would allow the participant to disassociate himself from his enterprise and reflect on what he has done."  *Matter of Adetiba*, 20 I&N Dec. at 509-10. We acknowledged that other courts, including the Second Circuit in *Nason*, had applied a broader interpretation of the statutory language, but we declined to follow that approach in cases arising outside those jurisdictions.  *Id.* at 510.[2]

The respondent now contends that we should apply the Second Circuit's decision in *Nason.*  He asserts that in finding no single scheme of criminal misconduct in that case, the court placed some emphasis on the 9-month time interval between the commission of the offenses.  By contrast, the respondent notes that he committed his crimes within a brief period on a single day and claims that he therefore did not have time to reflect on his first crime or disassociate himself from the criminal enterprise before completing his additional crimes.

As a threshold matter, therefore, we must determine whether to follow the approach we outlined in *Matter of Adetiba* or that of the Second Circuit in *Nason.*  We note in this regard that *Nason* was issued prior to the Supreme Court's decision in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), which held that where a statute is silent or ambiguous, an agency's interpretation of it should be given deference if it is based on a permissible construction of the statute.  In *Michel v. INS*, 206 F.3d 253, 260-61 (2d Cir. 2000), the Second Circuit specifically reserved the question whether *Chevron* deference is due to *Matter of Adetiba*, finding it unnecessary to decide, because on the facts of that case, the alien's crimes were not committed as part of a single scheme under either standard.[3]

---

[2] We do not regard our statements in *Adetiba* as indicating that we would necessarily follow *Nason* in cases arising in the Second Circuit.  Rather, we reserved the question, since it was not presented there.

[3] Judge Cabranes, concurring, would have accorded deference to *Matter of Adetiba*.  *Michel v. INS*, 206 F.3d at 266-68.

However, other circuits have determined that *Matter of Adetiba* warrants deference under *Chevron*. The Fourth Circuit so held in *Akindemowo v. U.S. INS*, 61 F.3d 282 (4th Cir. 1995), citing cases to like effect from the First, Fifth, Sixth, and Tenth Circuits, which it noted, even then, represented the majority view. *Balogun v. INS*, 31 F.3d 8, 9 (1st Cir. 1994) (per curiam); *Zaitona v. INS*, 9 F.3d 432, 437-38 (6th Cir. 1993); *Thanh Huu Nguyen v. INS*, 991 F.2d 621, 623 (10th Cir. 1993); *Iredia v. INS*, 981 F.2d 847, 849 (5th Cir. 1993). Subsequently, the Seventh Circuit joined those courts in deferring to our interpretation in *Matter of Adetiba* in *Abdelqadar v. Gonzales*, 413 F.3d 668, 675 (7th Cir. 2005). Furthermore, the Supreme Court has emphasized that the *Chevron* principle of deference must be applied to an agency's interpretation of ambiguous statutory provisions, even where a court has previously issued a contrary decision and believes that its construction was the better one, so long as the agency's interpretation is reasonable. *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005).

We find the phrase "single scheme of criminal misconduct" to be a quintessentially ambiguous term. It is therefore within our province to provide a reasonable interpretation of the phrase. In light of *Chevron* and *Brand X*, as well as the majority of Federal appellate court decisions that have given deference to our interpretation in *Matter of Adetiba*, we respectfully conclude that our analysis there is controlling and should now be uniformly applied in all circuits throughout the country.[4] *See also Negusie v. Holder*, 555 U.S. 511, 517 (2009) (noting that the Board should be accorded *Chevron* deference in its interpretation of ambiguous statutory terms); *Matter of C-T-L-*, 25 I&N Dec. 341, 348 (BIA 2010).

Turning to the issue of the respondent's removability, we first note that the question whether multiple crimes are part of a "single scheme of criminal misconduct" is not subject to the categorical approach but instead requires a "circumstance-specific" inquiry in which all relevant evidence may be consulted. *See Nijhawan v. Holder*, 129 S. Ct. 2294 (2009). Based on the evidence of record, we agree with the Immigration Judge's determination that under the analysis set forth in *Matter of Adetiba*, the DHS has established by clear and convincing evidence that the respondent's convictions for crimes involving moral turpitude did not arise out of a single scheme of criminal misconduct.

---

[4] We note that, unlike in *Nason* and *Michel*, where the Second Circuit found that no different outcome would result even under its more expansive test, if the Second Circuit were to apply *Nason* in this case, the outcome is unclear.

As the Immigration Judge observed, the respondent was convicted in two counties of forgery and possession of stolen property based on his use of multiple stolen credit or debit cards to obtain various items of value from several retail outlets on five separate occasions. The respondent contends that because his crimes took place during a brief period, he did not have time to reflect on his first offense or disassociate himself from the criminal enterprise before completing his additional crimes. However, the Immigration Judge did not agree with the respondent's assertion that there was no substantial interruption in his criminal actions. Nor do we.

On facts similar to those in this case, we stated the following in *Matter of Adetiba*, 20 I&N Dec. at 512:

> In the present case the respondent committed separate and distinct crimes each time he used a different credit card and obtained through its unauthorized use things of . . . value . . . .
>
> The use of additional cards did not flow from and was not a natural consequence of a single act of criminal misconduct. After use of any one credit card, the [respondent] had the opportunity to disassociate himself from his enterprise and reflect on what he had done.

The fact that the respondent traveled to different venues to obtain additional items of value with the stolen credit cards supports the Immigration Judge's determination that the respondent's crimes, while occurring in a single day, did not arise from a "single scheme" of criminal misconduct. We therefore concur with the Immigration Judge's conclusion that the respondent is removable under section 237(a)(2)(A)(ii) of the Act. Accordingly, the respondent's appeal will be dismissed.

The respondent states on appeal that, if removable, he is eligible to apply for cancellation of removal under section 240A(a) of the Act. However, we affirm the Immigration Judge's determination that the application was abandoned as a result of the respondent's failure to timely file a complete application for relief. *See* 8 C.F.R. § 1003.31(c) (2011) (providing that the Immigration Judge may set deadlines for the filing of applications and that if an application is not filed within the time set, the opportunity to file it is deemed waived); *see also Matter of R-R-*, 20 I&N Dec. 547, 549 (BIA 1992).[5]

---

[5] This case differs from *Matter of Interiano-Rosa*, 25 I&N Dec. 264 (BIA 2010), where we held that the Immigration Judge erred in deeming an application abandoned when the respondent did not file certain documents in support of the application in a timely manner. In that case, the Immigration Judge did not determine that the application was incomplete, only that certain supporting documents that he had requested had not been filed.

Finally, we note that the respondent asks to be released from custody pending further proceedings. We do not review custody determinations in the context of an appeal from an order of removal. *See, e.g.*, *Matter of R-S-H-*, 23 I&N Dec. 629, 630 n.7 (BIA 2003).

**ORDER:** The appeal is dismissed.