# Matter of Carlos Manuel BAEZA-GALINDO, Respondent

*Decided January 31, 2025*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Proximity in time is necessary but not sufficient to conclude that two crimes arise from a single scheme of criminal misconduct under section 237(a)(2)(A)(ii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(ii) (2018). *Matter of Adetiba*, 20 I&N Dec. 506, 509 (BIA 1992), clarified.

(2) Two crimes involving moral turpitude, premised on separate turpitudinous acts with different objectives, neither of which was committed in the course of accomplishing the other, constitute separate schemes of criminal misconduct.

FOR THE RESPONDENTS:  Stephen W. Spurgin, Esquire, El Paso, Texas

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Jennifer A. Cordova, Assistant Chief Counsel

BEFORE:  Board Panel:  GOODWIN, PETTY, and CLARK, Appellate Immigration Judges.

PETTY, Appellate Immigration Judge:

While driving under the influence of alcohol, the respondent struck a group of pedestrians with his truck, killing one of them and injuring the other three.  He then drove away.  The respondent was convicted of aggravated assault with a deadly weapon and of failing to stop and render aid.  The Immigration Judge terminated proceedings, concluding that while the respondent had been convicted of two crimes involving moral turpitude, they arose out of a single scheme of criminal misconduct.  We reverse.

## I. BACKGROUND

The underlying facts are not in dispute.  The respondent is a native and citizen of Mexico who was admitted to the United States as a lawful permanent resident in 1989.  On July 23, 2008, while driving his pickup truck while intoxicated, he struck and killed a 22-year-old woman and injured her 26-year-old sister-in-law, her 8-month-old son, and her sister-in-law's 9-month-old daughter as they were walking home from a park in Midland, Texas.  The victim's son had to be airlifted to Lubbock to receive emergency medical treatment for a lacerated liver.  The sister-in-law and her daughter

were taken to a local hospital and released after being treated for minor injuries. After striking the four victims, the respondent drove home, where he told his wife that it felt like something hit his truck. Pieces of a stroller were later found embedded in the truck's grill, and blood stains and clothing fabric were discovered in the truck's wheel wells. One witness believed the truck was traveling at a high rate of speed and then sped up further after the collision.

On December 12, 2008, the respondent was convicted of aggravated assault with a deadly weapon in violation of section 22.02(a)(2) of the Texas Penal Code, and of failure to stop and render aid in violation section 550.023 of the Texas Transportation Code. DHS charged the respondent as removable under section 237(a)(2)(A)(ii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(ii) (2018), for having been, at any time after admission, convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. The parties do not dispute that both the respondent's convictions constitute crimes involving moral turpitude. The respondent moved for termination, contending that the two convictions arose out of a single scheme of criminal misconduct.

The Immigration Judge concluded that the respondent's convictions did arise from a single scheme of criminal misconduct and therefore could not support the sole charge of removability. Specifically, the Immigration Judge observed that there was no significant period of intervening time between the assault and the beginning of the fleeing or failure to stop. Additionally, the Immigration Judge explained that "[i]t would not have been a crime to fail to stop unless there had been the immediately prior and connected assault." However, the Immigration Judge also acknowledged that the respondent's failure to stop "was directly attributable to trying to not be caught for the assault."

The only issue before us is whether the respondent's convictions arose from "a single scheme of criminal misconduct."[1] INA § 237(a)(A)(ii), 8 U.S.C. § 1227(a)(2)(A)(ii). We review this question of law de novo. *See* 8 C.F.R. § 1003.1(d)(3)(ii) (2025); *see also Matter of Islam*, 25 I&N Dec. 637, 639 (BIA 2011).

---

[1] The Board heard oral argument on this issue on October 8, 2024. Appellate Immigration Judge Keith Hunsucker was originally a member of the panel that heard oral argument in this case. He has been replaced on the panel by Appellate Immigration Judge Deborah K. Goodwin, who has familiarized herself with the record of proceedings, including a transcript of the oral argument.

## II. DISCUSSION

Section 237(a)(2)(A)(ii) of the INA, 8 U.S.C. § 1227(a)(2)(A)(ii), provides: "Any alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, is deportable." There is no meaningful legislative history to guide our interpretation of this phrase. *See Matter of Islam*, 25 I&N Dec. at 639 (citing *Nason v. INS*, 394 F.2d 223, 227 (2d Cir. 1968)); *Matter of Adetiba*, 20 I&N Dec. 506, 509 (BIA 1992). But for over 70 years, we have adhered to our initial construction of "single scheme," including the importance of relative time.[2]

> To us, the natural and reasonable meaning of the statutory phrase is that when an alien has performed an act which, in and of itself, constitutes a complete, individual and distinct crime then he becomes deportable when he again commits such an act, provided he is convicted of both. *The fact that one may follow the other closely, even immediately, in point of time is of no moment.*

*Matter of D-*, 5 I&N Dec. 728, 729 (BIA 1954) (emphasis added); *accord Akindemowo v. U.S. INS*, 61 F.3d 282, 285 (4th Cir. 1995) (noting the Board has "unfailingly" followed *Matter of D-*); *see also Okoro v. INS*, 125 F.3d 920, 927 (5th Cir. 1997) ("Neither their proximity in time nor their similarity in purpose prevents Okoro's acts from constituting two distinct crimes.").

In *Matter of Adetiba*, we again addressed the relative time of two criminal acts, explaining that "to be a 'single scheme,' the scheme must take place at one time, meaning there must be no substantial interruption that would allow the participant to disassociate himself from his enterprise and reflect on what he has done." 20 I&N Dec. at 509–10. But *Matter of Adetiba* held only that the *presence* of a substantial interruption conclusively shows that two crimes are *not* part of a single scheme. The converse is not true; that is, the *absence* of a substantial interruption does not conclusively show that two crimes *are* part of a single scheme. Rather, *Matter of D-* and its progeny hold that the absence of intervening time, while relevant, is not sufficient to establish that two crimes are part of a single scheme. *See Matter of Islam*, 25 I&N Dec. at 639 (collecting cases). *But see Szonyi v. Whitaker*, 915 F.3d 1228, 1239 (9th Cir. 2019) (Fisher, J., dissenting) (suggesting that Board

---

[2]   The statute uses the word "scheme," which we have long equated with "act," *see, e.g., Matter of B-*, 8 I&N Dec. 236, 238 (BIA 1958), in large measure to avoid the perverse result that planning multiple acts of criminality in advance would insulate the criminal from removability. *See Matter of Z-*, 6 I&N Dec. 167, 171 (BIA 1954).

precedent holds that the lack of a substantial interruption is independently dispositive).

To summarize, where there is a substantial interruption between two criminal acts, those acts are necessarily separate schemes. *See Matter of Adetiba*, 20 I&N Dec. at 509–10. However, two crimes close in time may be part of a single scheme of criminal misconduct, but they may also be separate schemes of misconduct, or even entirely unrelated. In other words, proximity in time is necessary but not sufficient to conclude that two crimes arise from a single scheme of criminal misconduct under section 237(a)(2)(A)(ii) of the INA, 8 U.S.C. § 1227(a)(2)(A)(ii). As such, Immigration Judges should not rely only on the absence of intervening time in concluding two crimes of moral turpitude arise out of a single scheme of criminal misconduct.

The Immigration Judge also reasoned that the respondent's convictions arose out of a single scheme of criminal misconduct because it would not have been a crime to fail to stop unless there had been the immediately prior and connected assault. Our case law requires more.

The original version of what is now section 237(a)(2)(A)(ii) of the INA, 8 U.S.C. § 1227(a)(2)(A)(ii), provided that a respondent who was "sentenced more than once" to a term of imprisonment of 1 year or more for a crime involving moral turpitude were deportable. *See* Immigration Act of February 5, 1917, ch. 29, § 19, 39 Stat. 874, 889. In 1948, the Supreme Court of the United States interpreted this provision to apply only if the convictions were entered after separate trials. *Fong Haw Tan v. Phelan*, 333 U.S. 6, 9–10 (1948). In the Immigration and Nationality Act of 1952, Pub. L. No. 82-414, § 241(a)(4), 66 Stat. 163, 204 (codified at 8 U.S.C. § 1251(a)(4) (1952)), Congress created a new provision that applied "regardless of whether the convictions were in a single trial," but added the current limitation that the relevant convictions must "not aris[e] out of a single scheme of criminal misconduct." *See also Matter of B-*, 8 I&N Dec. 236, 238–39 (BIA 1958). In doing so, "Congress intended to continue the protection which existed against the deportation of an alien who had been twice convicted for what was *essentially one act*." *Id.* at 238 (emphasis added).

We have recognized that "essentially one act" occurs where the respondent has committed one physical act that "the law looks upon . . . from two viewpoints." *Id.* at 239. This includes instances in which "one crime

constitutes a lesser offense of another."[3]  *Matter of Adetiba*, 20 I&N Dec. at 511.  It also includes instances in which the defendant performs a single act that concurrently harms multiple victims in essentially the same way.  *See Matter of B-*, 8 I&N Dec. at 239 (recognizing a single scheme "[w]here there are a series of similar acts which occurred at 'one time,'" for example "A, B, and C are robbed by the alien at the same time"); *see also Abdelqadar v. Gonzales*, 413 F.3d 668, 675 (7th Cir. 2005) ("Robbing six people at one poker game therefore would be a single scheme even if it led to multiple convictions . . . .").  Neither of these scenarios are at issue in this case.

We have also treated as arising out of a single scheme of criminal misconduct multiple turpitudinous acts that "occur within a comparatively short time of each other, involve the same parties, and the first act or acts are committed for the purpose of making possible the specific criminal objective accomplished by the last of the criminal acts."  *Matter of B-*, 8 I&N Dec. at 239; *see also Matter of Z-*, 6 I&N Dec. 167, 171 (BIA 1954) ("[T]wo crimes do arise out of a 'single scheme' when both are part and parcel of a course of criminal conduct designed to accomplish a specific and limited criminal objective.").  A typical example is an assault on a guard while committing larceny.  *Id*.; *see also Matter of Islam*, 25 I&N Dec. at 640 (reasoning that committing assault in connection with breaking in to a store with the intent to commit larceny would be part of a single scheme); *Matter of Adetiba*, 20 I&N Dec. at 509 (same).  Although these criminal episodes [4] involve multiple turpitudinous acts, it would be contrary to Congress' design to treat them as separate schemes where they are committed with the same overall objective, and the commission of one crime occurs in the course of accomplishing another.  *See Matter of B-*, 8 I&N Dec. at 238–39.  We have explained that in such a case, there is "morally . . . only a single wrong."  *Matter of D-*, 5 I&N Dec. at 730.

Attempting to avoid capture or responsibility for a completed crime does not facilitate its accomplishment.  *See Nguyen v. INS*, 991 F.2d 621, 625 (10th Cir. 1993) ("Petitioner did not need to shoot at the officer in order successfully to complete the act of stealing the car.  The car had, many hours earlier, been successfully removed from its true owner.").  Trying not to be caught for a completed crime is a separate moral wrong with a new criminal

---

[3]  This is now uncommon, as criminal defendants can no longer constitutionally be sentenced for a crime and its lesser included offenses.  *See Brown v. Ohio*, 432 U.S. 161, 169 (1977).

[4]  We have sometimes referred to this type of situation—where one crime is committed in the course of, causing, or facilitating another—as a single criminal "episode."  *See, e.g.*, *Matter of B-*, 8 I&N Dec. at 239.

objective, not a subordinate act in service of the same criminal objective. *See Matter of D-*, 5 I&N Dec. at 730.

Determining whether multiple offenses arise out of a single scheme may require specific fact-finding on this point. Here, however, the Immigration Judge has already found that the respondent's failure to stop "was directly attributable to trying to not be caught for the assault," not to completing it. We also recognize, as the Immigration Judge did, that it is logically necessary for the assault to have occurred first. However, the aggravated assault with a deadly weapon was not intended to facilitate the accomplishment of later failing to stop and render aid. *See Matter of Z-*, 6 I&N Dec. at 171. Nothing in the record suggests that the respondent intentionally drove his truck into two young mothers and their infants for the purpose of thereafter leaving them dead and injured in the road.

Two crimes involving moral turpitude, premised on separate turpitudinous acts with different objectives, neither of which was committed in the course of accomplishing the other, constitute separate schemes of criminal misconduct. The respondent is therefore removable under section 237(a)(2)(A)(ii) of the INA, 8 U.S.C. § 1227(a)(2)(A)(ii), for having been, at any time after admission, convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. We will sustain the appeal and reverse the Immigration Judge's decision terminating the respondent's removal proceedings.

**ORDER:** DHS' appeal is sustained, and the Immigration Judge's decision is reversed.

**FURTHER ORDER:** The record is remanded for further proceedings consistent with this opinion and for the entry of a new decision.