# Matter of Jorge Isaac SANCHEZ-LOPEZ, Respondent

*Decided November 29, 2012*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

 The offense of stalking in violation of section 646.9 of the California Penal Code is "a crime of stalking" under section 237(a)(2)(E)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(E)(i) (2006).

FOR RESPONDENT: Matthew L. Hoppock, Esquire, Kansas City, Missouri

FOR THE DEPARTMENT OF HOMELAND SECURITY: William P. Hollerich, Assistant Chief Counsel

BEFORE: Board Panel: PAULEY, GUENDELSBERGER, and MALPHRUS, Board Members.

PAULEY, Board Member:

In a decision dated March 21, 2012, an Immigration Judge found the respondent removable as an alien convicted of a crime of stalking under section 237(a)(2)(E)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(E)(i) (2006), and denied his application for cancellation of removal under section 240A(a) of the Act, 8 U.S.C. § 1229b(a) (2006).[1] The respondent has appealed from that decision. The appeal will be dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Peru who was admitted to the United States on May 6, 1993, as a lawful permanent resident. On April 19, 2011, he was convicted of stalking in violation of section 646.9(b) of the California Penal Code, for which he was sentenced to a period of 2 years in prison. The Immigration Judge concluded that the respondent is removable on the basis of that conviction. He also denied the respondent's application for

---

[1] The Immigration Judge also found that the respondent was not removable under section 237(a)(2)(A)(iii) of the Act as an alien convicted of an aggravated felony, but that determination is not before us on appeal.

cancellation of removal under section 240A(a) of the Act as a matter of discretion. The respondent has appealed both of these determinations.

## II. STATUTORY PROVISIONS

Section 237(a)(2)(E)(i) of the Act provides in pertinent part:

> Any alien who at any time after admission is convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment is deportable.

Section 646.9 of the California Penal Code provides in pertinent part:

> (a)  Any person who willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family is guilty of the crime of stalking, punishable by imprisonment in a county jail for not more than one year, or by a fine of not more than one thousand dollars ($1,000), or by both that fine and imprisonment, or by imprisonment in the state prison.
> (b)  Any person who violates subdivision (a) when there is a temporary restraining order, injunction, or any other court order in effect prohibiting the behavior described in subdivision (a) against the same party, shall be punished by imprisonment in the state prison for two, three, or four years.
> . . . .
> (e)  For the purposes of this section, "harasses" means engages in a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, torments, or terrorizes the person, and that serves no legitimate purpose.
> (f)  For the purposes of this section, "course of conduct" means two or more acts occurring over a period of time, however short, evidencing a continuity of purpose. Constitutionally protected activity is not included within the meaning of "course of conduct."
> (g)  For the purposes of this section, "credible threat" means a verbal or written threat . . . made with the intent to place the person that is the target of the threat in reasonable fear for his or her safety or the safety of his or her family, and made with the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her family.

## II. ANALYSIS

This case presents an issue of first impression, namely how to define a "crime of stalking" under section 237(a)(2)(E)(i) of the Act. Although Congress chose to define the term "crime of domestic violence," specifically referencing a Federal criminal statute and a host of other laws that defined the legal scope of domestic relationships, the term "crime of stalking" was left

undefined. *See Matter of Velazquez-Herrera*, 24 I&N Dec. 503, 508 (BIA 2008) (noting that the crime of child abuse was also undefined in the Act). Accordingly, in the absence of a statutory definition of the term "crime of stalking" in the Act, we employ the "ordinary, contemporary, and common meaning," which "is necessarily informed by the term's legal usage." *Id.*; *see also Perrin v. United States*, 444 U.S. 37, 42 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.").

Section 237(a)(2)(E)(i) of the Act was enacted in section 350(a) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 309-639 ("IIRIRA"), effective September 30, 1996. By that time, the United States and more than half the States had enacted criminal stalking statutes, with California's being the first in 1990.[2] *See* 2 Wayne R. LaFave, *Substantive Criminal Law* § 16.4 (2d ed. Westlaw 2012). Many of these statutes were influenced by a model stalking law that was created as a result of a request by Congress to the Department of Justice's National Institute of Justice. The model statute, which was presented to the States and Congress in 1993, provides as follows:

> Section 1. For purposes of this code:
>     (a) "Course of conduct" means repeatedly maintaining a visual or physical proximity to a person or repeatedly conveying verbal or written threats or threats implied by conduct or a combination thereof directed at or toward a person;
>     (b) "Repeatedly" means on two or more occasions;
>     (c) "Immediate family" means a spouse, parent, child, sibling, or any other person who regularly resides in the household or who within the prior six months regularly resided in the household.
>
> Section 2. Any person who:
>     (a) purposely engages in a course of conduct directed at a specific person that would cause a reasonable person to fear bodily injury to himself or herself or a member of his or her immediate family or to fear the death of himself or herself or a member of his or her immediate family; and
>     (b) has knowledge or should have knowledge that the specific person will be placed in reasonable fear of bodily injury to himself or herself or a member of his or her immediate family or will be placed in reasonable fear of the death of himself or herself or a member of his or her immediate family; and

---

[2] The Federal statute, which was enacted shortly before the IIRIRA, is currently at 18 U.S.C. § 2261A (2006). Because Congress did not define stalking in section 237(a)(2)(E)(i) by reference to the Federal statute, we do not consider it to be dispositive. *See Matter of M-W-*, 25 I&N Dec. 748, 751-52 & n.5 (BIA 2012) (noting that the Federal statute defining murder was not dispositive in defining the aggravated felony crime of murder).

(c) whose acts induce fear in the specific person of bodily injury to himself or herself or a member of his or her immediate family or induce fear in the specific person of the death of himself or herself or a member of his or her immediate family;
is guilty of stalking.

National Institute of Justice, U.S. Dep't of Justice, *Project To Develop a Model Anti-Stalking Code for States* 43-44 (1993).

At the time section 237(a)(2)(E)(i) was enacted, the existing State and Federal statutes contained the following common elements: (1) conduct that was engaged in on more than a single occasion, (2) which was directed at a specific individual, (3) with the intent to cause that individual or a member of his or her immediate family to be placed in fear of bodily injury or death. A fourth element of the crime of stalking, on which there is no clear consensus in the State statutes, involves the consequence of such conduct.

Regarding this fourth element, there is no agreement whether there must be a showing that the individual was, in fact, placed in fear of bodily injury or death; whether it is sufficient to show *only* that a reasonable person in the circumstances would have been placed in such fear; or whether it is necessary to prove that *both* the targeted individual *and* a reasonable person in the circumstances did or would experience such fear. For purposes of this appeal, however, it is unnecessary for us to resolve the contours of the fourth element relating to the consequences of the conduct because the California stalking statute, like the Federal stalking statute and those of several other States, requires proof that both the subjective and objective consequences of the defendant's stalking conduct have been established. We therefore leave that issue to a future case.

Applying the above definition,[3] we conclude that the offense of stalking in violation of section 646.9 of the California Penal Code is a "crime of stalking" under section 237(a)(2)(E)(i) of the Act.[4] A conviction under

---

[3] Our definition is generally in accord with the decision of the United States Court of Appeals for the Second Circuit in *Arriaga v. Mukasey*, 521 F.3d 219 (2d Cir. 2008), which upheld section 237(a)(2)(E)(i) of the Act against a constitutional vagueness challenge. To the extent that the respondent has also argued that the stalking provision is void for vagueness, we note that neither the Board nor the Immigration Judges have the authority to rule on the constitutionality of the statutes that we administer. *See Matter of Fede*, 20 I&N Dec. 35, 36 (BIA 1989); *Matter of Valdovinos*, 18 I&N Dec. 343, 345 (BIA 1982).

[4] To our knowledge, the Ninth Circuit, in whose jurisdiction this case arises, has not decided this question. We note that in *Malta-Espinoza v. Gonzales*, 478 F.3d 1080, 1084 (9th Cir. 2007), the Ninth Circuit held that the offense of stalking under the California statute is not a crime of violence and reversed our decision in *Matter of Malta*, 23 I&N Dec. 656 (BIA 2004), but it did not address whether the alien's conviction rendered him removable

(continued...)

section 646.9(a) requires proof that the defendant "willfully, maliciously, and repeatedly follow[ed] or willfully and maliciously harasse[d] another person and . . . ma[de] a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family."[5] S*ee People v. Ibarra,* 67 Cal. Rptr. 3d 871, 889-90 (Cal. Ct. App. 2007); *People v. McCray*, 67 Cal. Rptr. 2d 872, 879-80 (Cal. Ct. App. 1997). Each of the elements of the crime of stalking, as defined for purposes of section 237(a)(2)(E)(i) of the Act, must therefore be established for a conviction under the California statute. Accordingly, we conclude that the Immigration Judge properly found the respondent to be removable based on his conviction for stalking.

We are unpersuaded by the respondent's assertion that his conduct only "involved one instance of attempting to enter his ex-girlfriend's home." As previously noted, a conviction under the California stalking statute requires a showing that the perpetrator "repeatedly" engaged in prohibited conduct. In any case, we cannot consider the respondent's claim that he was wrongfully convicted of "stalking"since he only engaged in a onetime act, because neither the Board nor the Immigration Judges can readjudicate a convicted alien's guilt or innocence. *See Matter of Pichardo*, 21 I&N Dec. 330, 335 (BIA 1996).

The respondent also argues that the Immigration Judge did not consider whether he was eligible for a waiver of removability under section 237(a)(7)(A) of the Act, as an alien who has been "subjected to extreme cruelty and who is not and was not the primary perpetrator of violence in the relationship." However, the respondent made no prima facie showing that he was subjected to extreme cruelty and has therefore not established that the outcome of his proceedings may have been affected by the Immigration Judge's failure to consider his eligibility for a waiver. *See Ibarra-Flores v. Gonzales*, 439 F.3d 614, 620-21 (9th Cir. 2006) (stating that to establish a claim that due process rights were violated, an alien must demonstrate

---

(...continued)
under section 237(a)(2)(E)(i) of the Act. We have declined to follow the Ninth Circuit's decision in cases arising outside of that circuit. *Matter of U. Singh*, 25 I&N Dec. 670 (BIA 2012).

[5]   A California court specifically refused to limit the term "safety" in  section 646.9(a) of the California Penal Code to "physical safety" and implied that in addition to immediate physical harm, it could also include the concept of endangerment or hazard. *See People v. Borrelli*, 91 Cal. Rptr. 2d 851, 862-63 (Cal. Ct. App. 2000). However, nothing in the record indicates that the fear of safety experienced by the respondent's victim was anything other than a fear of physical safety; nor does the respondent contend otherwise. The respondent's testimony that he did not subjectively intend to harm the victim is irrelevant, because the statute only requires an intent that the victim be placed in reasonable fear.

prejudice, which means that the outcome of the proceeding may have been affected by the alleged violation).

The respondent's assertion on appeal that his girlfriend was "[w]rongfully withholding the custody of [his] child" significantly mischaracterizes the portions of his and his witness's testimony that were cited as examples of "extreme cruelty." The transcript shows, to the contrary, that the respondent's girlfriend was at one point amenable to letting him see the children; that he was granted visiting rights for his two children but not for his third newly born child; and that the conduct underlying his conviction arose from his insistence to see his third child, for whom he did not have visitation rights, at the home of his ex-girlfriend, who had a restraining order against him.[6] Likewise, there is no evidence that the girlfriend was ever the perpetrator of any violence in the relationship. No other evidence has been cited that would support the conclusion that the waiver under section 237(a)(7)(A) of the Act was at issue in the respondent's case.

Regarding his application for cancellation of removal under section 240A(a) of the Act, the respondent argues that the Immigration Judge erred in denying him relief as a matter of discretion. Upon de novo review of this determination, we agree with the Immigration Judge that the respondent did not demonstrate that he merits a favorable exercise of discretion. *See* 8 C.F.R. §§ 1003.1(d)(3)(ii), 1240.8(d) (2012).

We agree with the respondent that the relevance to this determination of his two terminated removal proceedings is unclear, particularly absent any evidence of why he was previously placed in removal proceedings and why they were terminated.[7] However, the Immigration Judge's finding that the respondent was a repeat criminal offender has not been meaningfully disputed. In exercising discretion, the Immigration Judge considered the respondent's recidivism, his repeated violations of the restraining order, and his attempt to minimize his serious misconduct as simply the result of a desire to see his newborn child. These were appropriate factors for the Immigration Judge to consider in determining whether the respondent might engage in similar

---

[6] In citing the transcript, we do not purport to make findings of fact that this testimony is true. We note it only to demonstrate the absence of any evidence sufficient to support the respondent's claim of prima facie eligibility for the waiver he alleges should have been considered.

[7] We note that the respondent's attorney filed a "Motion to Correct Transcript" during the pendency of the appeal. Counsel did not, however, identify any errors in the transcript. Moreover, he has not demonstrated that the absence of transcripts from the respondent's prior terminated removal proceedings precluded him from filing an appeal brief.

behavior and violations of the law in the future, and thus whether a favorable exercise of discretion was warranted. *See Matter of C-V-T-*, 22 I&N Dec. 7, 11 (BIA 1998).

The respondent also asserts that the Immigration Judge should have considered his claimed "mental illness" during the commission of the offense as part of the discretionary analysis. When questioned, the respondent did not indicate that he had a mental illness at the time he committed the stalking offense in 2011. Rather, he testified that he was medicated "one time" when he was "younger" while in county jail, but he indicated that he had been helped. Likewise, the respondent's sister clarified that she did not intend to testify that he was mentally ill and stated that she only meant to say that he makes the wrong choices in life. The various assertions made on appeal regarding the respondent's alleged mental illness are therefore unsupported by the evidence presented at the hearing. Consequently, we find no merit in the contention that the Immigration Judge erred because he did not consider the respondent's mental health or the availability of medical treatment in Peru in his discretionary analysis.[8]

There is also no indication that the Immigration Judge failed to consider other factors relevant to a discretionary determination that the respondent claims may have collectively outweighed the significant adverse factor of his recidivist criminal history, including when he committed his crimes, his participation in rehabilitation programs while in prison, and his elderly mother's hardship. *See, e.g.*, *Almaghzar v. Gonzales*, 457 F.3d 915, 922-23 (9th Cir. 2006) (stating that an Immigration Judge is not required to discuss every piece of evidence).

Finally, the respondent contends that the Immigration Judge erred in denying his request to offer his mother's testimony. We do not agree. As admitted on appeal, the request was made on the same day that the Immigration Judge was scheduled to render his decision and after he had already declared that the record was "closed to any further evidence or argument." *See Matter of Interiano-Rosa*, 25 I&N Dec. 264, 265 (BIA 2010) (stating that Immigration Judges are not required to admit documents that are submitted after a filing deadline). Also, the record included a written statement from the respondent's mother, and there is no indication that the Immigration Judge did not consider her statement. Moreover, nothing offered on appeal persuasively establishes that the respondent was precluded from presenting any evidence that may have affected the outcome of his case or that

---

[8] We note that the respondent has presented no claim that he was not mentally competent during his removal proceedings or that a mental competency analysis should have been made pursuant to *Matter of M-A-M-*, 25 I&N Dec. 474 (BIA 2011).

would justify a remand for further proceedings.   *See Ibarra-Flores v. Gonzales*, 439 F.3d at 620-21.  We therefore conclude that the Immigration Judge properly denied the respondent's application for cancellation of removal under section 240A(a) of the Act as a matter of discretion.

Accordingly, the respondent's appeal will be dismissed.

**ORDER:**  The appeal is dismissed.