**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MIGUEL ANGEL ORELLANA,
                                    *Petitioner*,

v.

WILLIAM P. BARR, Attorney General,
                                    *Respondent.*

No. 19-70164

Agency No.
A072-937-494

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted May 6, 2020*
Pasadena, California

Filed July 28, 2020

Before: MILAN D. SMITH, JR., JOHN B. OWENS, and
DANIEL A. BRESS, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.;
Concurrence by Judge Owens

---

*The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

## SUMMARY[**]

### Immigration

Denying Miguel Orellana's petition for review of a decision of the Board of Immigration Appeals, the panel held that 1) a conviction for criminal stalking, in violation of California Penal Code (CPC) § 646.9(a), is categorically a crime involving moral turpitude (CIMT); and 2) the BIA reasonably concluded that Orellana's two § 646.9(a) counts of conviction did not arise out of single scheme of criminal misconduct, and therefore, made him removable.

Reviewing the statute of conviction de novo, the panel first concluded that the BIA did not err in identifying the elements of a § 646.9(a) offense. Next, comparing the elements of the statute with the federal definition of a CIMT, the panel concluded that the BIA did not err in concluding that Orellana's § 646.9(a) conviction is a CIMT. The panel observed that this court has defined a CIMT as involving either fraud or base, vile, and depraved conduct that shocks the public conscience, and that CIMTs generally involve some evil intent.

The panel explained that the BIA's reliance on its published decision in *In re Ajami*, 22 I. & N. Dec. 949 (B.I.A. 1999), was not entitled to deference under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), because *Ajami* did not interpret § 646.9(a). Nonetheless, the panel concluded that the BIA's reliance on

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

*Ajami* was entitled to deference under *Skidmore v. Swift & Co*., 323 U.S. 134 (1944), explaining that: 1) in *Ajami*, the BIA determined that the offense was a CIMT because it involved transmission of threats, thus evincing a vicious motive or a corrupt mind; and 2) § 646.9(a) prohibits conduct that is materially identical to the offense in *Ajami*.

The panel also concluded that there was not a "realistic probability" that the statute applies to conduct that is not morally turpitudinous because all the conduct that § 646.9(a) criminalizes is morally turpitudinous. The panel explained that § 646.9(a) was more similar to the criminal threat statute held to be a CIMT in *Latter-Singh v. Holder*, 668 F.3d 1156 (9th Cir. 2012), than statutes this court has held are not CIMTs. The panel explained that § 646.9(a), like the statute in *Latter-Singh*, criminalizes only credible threats that cause the targeted person to reasonably fear for his or her safety or his or her family's safety, threats made with the apparent ability to carry out the threat, and threats specifically intended to cause such fear in the targeted person. Further, the panel concluded that, although § 646.9(a) does not expressly require the threat of death or bodily injury (as does the statute in *Latter-Singh*), the BIA was entitled to place greater emphasis on the evil intent or corrupt mind required by § 646.9(a).

The panel also held that the BIA reasonably concluded that Orellana's two § 646.9(a) counts of conviction did not arise out of a single scheme of criminal conduct, and therefore, made him removable under 8 U.S.C. § 1227(a)(2)(A)(ii). The panel explained that the BIA's determination accorded with its precedential decision in *Matter of Adetiba*, 20 I. & N. Dec. 506 (B.I.A. 1992), to which the court accords *Chevron* deference. Further, the panel upheld the BIA's determination for the additional

reason that the conclusion aligned with this court's decision in *Leon-Hernandez v. U.S. I.N.S.*, 926 F.2d 902 (9th Cir. 1991), which recognized a rebuttable presumption of separate crimes created by the fact that the crimes were committed on different dates.

Concurring, Judge Owens joined the majority opinion in full because it correctly applied the law as it now stands, but wrote separately to express his view that the court's current CIMT approach is, in the words of his Grandpa Harold, "dumb, dumb, dumb." He wrote that other judges share that view and that a smarter (and more just) approach would be to look to a more objective standard, such as the length of the underlying sentence, before deciding if someone should be removed.

## COUNSEL

Rosana Kit Wai Cheung, Los Angeles, California, for Petitioner.

Joseph H. Hunt, Assistant Attorney General; Stephen J. Flynn, Assistant Director; Robert Michael Stalzer, Trial Attorney; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

## OPINION

M. SMITH, Circuit Judge:

Petitioner Miguel Orellana is a native and citizen of El Salvador who became a lawful permanent resident of the United States. Decades after his admission to the United States, he was convicted of two counts of criminal stalking in violation of California Penal Code § 646.9(a) for which he received a one-year term of imprisonment. In relevant part, the Department of Homeland Security (DHS) charged him with being removable as an alien who committed two crimes involving moral turpitude (CIMT) not arising out of a single scheme of criminal conduct after admission to the United States. 8 U.S.C. § 1227(a)(2)(A)(ii). An immigration judge (IJ) concluded that Orellana was removable as charged. The Board of Immigration Appeals (BIA) affirmed. Orellana petitioned for our review.

We hold that the BIA did not err in concluding that a § 646.9(a) criminal stalking conviction is a CIMT because a § 646.9(a) offense is categorically a CIMT. We hold further that the BIA reasonably concluded that Orellana's two § 646.9(a) counts of conviction did not arise out of a single scheme of criminal misconduct. Thus, we deny the petition.

## BACKGROUND

Orellana has resided in the United States since 1986. He obtained lawful permanent resident status in 1997. Twenty years later, a California state court convicted him in 2017 of two counts of criminal stalking in violation of § 646.9(a) pursuant to a plea of nolo contendere and sentenced him to 365 days of imprisonment with 224 days in credit.

After he served the remainder of his sentence, DHS took Orellana into custody. DHS served Orellana with a notice to appear (NTA), charging him with being removable pursuant to 8 U.S.C. § 1227(a)(2)(E)(i) as an alien convicted of the crime of stalking after entry. Orellana conceded removability through counsel and sought cancellation of removal, which the IJ denied. On appeal to the BIA, Orellana moved to remand in light of an intervening decision in which the BIA had concluded that a § 646.9(a) offense is not a categorical match with the federal crime of stalking.[1] *Matter of Sanchez-Lopez*, 27 I. & N. Dec. 256 (B.I.A. 2018). DHS moved to remand to lodge a new charge of removability. On remand, DHS charged Orellana as removable as an alien convicted of two CIMTs not arising out of a single scheme of criminal misconduct. Orellana argued that DHS could not prove removability.[2] The IJ determined that a § 646.9(a) criminal stalking offense is categorically a CIMT and the two § 646.9(a) counts did not arise out of a single scheme of criminal misconduct. The BIA affirmed in an unpublished decision. Orellana timely petitioned for review.

---

[1] The BIA construed the federal crime of stalking in § 1227(a)(2)(E)(i) to require "the intent to cause that individual or a member of his or her immediate family to be placed in fear of bodily injury or death." *Matter of Sanchez-Lopez*, 26 I. & N. Dec. 71, 76 (B.I.A. 2012). The BIA reversed its conclusion that § 646.9(a) is a categorical match with that crime because § 646.9(a) is not textually limited to threats of death or bodily injury. *Matter of Sanchez-Lopez*, 27 I. & N. at 260–61.

[2] Orellana also moved to terminate proceedings for lack of jurisdiction pursuant to *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), because the original NTA lacked the date and time of his first hearing. The IJ denied that motion. Orellana did not appeal that denial to the BIA.

**JURISDICTION AND STANDARD OF REVIEW**

We have jurisdiction pursuant to 8 U.S.C. § 1252. With the exception of constitutional claims and questions of law, we lack jurisdiction to review a final order of removal against an alien who is removable for having committed two CIMTs not arising out of a single scheme of criminal misconduct when a sentence of one year or longer may be imposed on each offense.[3] 8 U.S.C. §§ 1252(a)(2)(C), (D); *Planes v. Holder*, 652 F.3d 991, 998 (9th Cir. 2011). Whether a crime involves moral turpitude is a question of law that we review de novo. *Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1067 (9th Cir. 2007) (en banc), *overruled in part on other grounds by*, *Ceron v. Holder*, 747 F.3d 773, 782 n.2 (9th Cir. 2014) (en banc). Questions of law include the application of law to undisputed or established facts. *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1067 (2020).

**ANALYSIS**

**I. A § 646.9(a) Criminal Stalking Conviction is Categorically a CIMT**

The threshold issue we must decide is whether the BIA erred in concluding that a § 646.9(a) criminal stalking offense is a CIMT. We have not addressed in a precedential decision whether a criminal stalking offense qualifies as a

---

[3] Our assessment of whether Orellana was removable as charged pursuant to § 1227(a)(2)(A)(ii) collapses an assessment of jurisdiction into the merits. *Chavez-Perez v. Ashcroft*, 386 F.3d 1284, 1287 (9th Cir. 2004).

CIMT[4], nor are we aware of a decision by any of our sister circuits doing so.

To determine whether a § 646.9(a) conviction is a CIMT, our analysis "involves two steps, to which different standards of review apply." *Castrijon-Garcia v. Holder*, 704 F.3d 1205, 1208 (9th Cir. 2013) (citation, internal quotation marks, and brackets omitted), *overruled in part on other grounds by*, *Ceron*, 747 F.3d at 782 n.2. First, we determine the elements of the underlying crime, reviewing de novo because the BIA "'has no special expertise by virtue of its statutory responsibilities in construing state or federal criminal statutes.'" *Uppal v. Holder*, 605 F.3d 712, 714 (9th Cir. 2010) (quoting *Marmolejo-Campos v. Holder*, 558 F.3d 903, 907 (9th Cir. 2009) (en banc)). If the BIA errs in determining the elements of the offense, "we owe its CIMT analysis at step two no deference." *Hernandez-Cruz v. Holder*, 651 F.3d 1094, 1106 (9th Cir. 2011). Second, we compare the elements of the statute of conviction with the federal definition of a CIMT. *Fugow v. Barr*, 943 F.3d 456, 458 (9th Cir. 2019) (per curiam). An offense is categorically a CIMT if, when looking only to the fact of conviction and the statutory definition of the offense, the full range of conduct the statute proscribes matches the generic definition of a CIMT. *Galeana-Mendoza v. Gonzales*, 465 F.3d 1054, 1057–58 (9th Cir. 2006). But "[i]f there is a 'realistic probability' that the statute of conviction would be applied to non-turpitudinous conduct, there is no categorical match."

---

[4] In *Zavaleta-Gallegos v. INS*, 261 F.3d 951, 955 (9th Cir. 2001), the alien petitioner conceded that his § 646.9 stalking offense, which included a § 646.9(b) penalty, was a CIMT. Thus, we did not decide whether the offense was a CIMT. More recently, a panel of our court issued a nonprecedential disposition, which held that the BIA reasonably concluded that a § 646.9(a) conviction is categorically a CIMT. *Raya-Moreno v. Holder*, 504 F. App'x 589, 591 (9th Cir. 2013).

*Fugow*, 943 F.3d at 458. We defer to the BIA's conclusion at the second step "following the *Chevron* framework if the decision is published or directly controlled by a published decision[.]" *Ceron*, 747 F.3d at 778; *see also Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). The *Skidmore* framework applies "if the decision is unpublished (and not directly controlled by any published decision interpreting the same statute)." *Uppal*, 605 F.3d at 714; *see also Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). "If neither applies, we review de novo." *Vasquez-Valle v. Sessions*, 899 F.3d 834, 838 (9th Cir. 2018).

### A. The Elements of California Penal Code § 646.9(a)

Pursuant to California law, one commits the crime of stalking if one "willfully, maliciously, and repeatedly follows, or willfully and maliciously harasses another person and . . . makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family[.]" Cal. Penal Code § 646.9(a).[5] The offense has been distilled into three elements. *People v. Uecker*, 91 Cal. Rptr. 3d 355, 364 (Ct. App. 2009); CALJIC 9.16.11 (jury instructions applicable to § 646.9(a) offenses committed after January 1, 2003).

The first element is "willfully, maliciously, and repeatedly follow[ing] *or* willfully and maliciously harass[ing] another person[.]" Cal. Penal Code § 646.9(a) (emphasis added); *Uecker*, 91 Cal. Rptr. 3d at 364. The statute defines the term "harasses" to be "engages in a

---

[5] The statute contains other provisions that enhance the penalty for a violation of § 646.9(a) depending on the presence of other factors. Cal. Pen. Code § 646.9(b)–(c). A § 646.9(a) violation is a predicate for these enhancements.

knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, torments, or terrorizes the person, and that serves no legitimate purpose." Cal. Penal Code § 646.9(e). Excluding "[c]onstitutionally protected activity," the statute defines "course of conduct" as "two or more acts occurring over a period of time, however short, evidencing a continuity of purpose." *Id.* § 646.9(f).

The second element is "mak[ing] a credible threat." Cal. Penal Code § 646.9(a); *Uecker*, 91 Cal. Rptr. 3d at 364. A "credible threat" is "a verbal or written threat, including that performed through the use of an electronic communication device, or a threat implied by a pattern of conduct or a combination of verbal, written, or electronically communicated statements and conduct . . . ." Cal. Penal Code § 646.9(g). The threat must be "made with the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her family." *Id.* "Constitutionally protected activity is not included within the meaning of 'credible threat.'" *Id.*

The third element is that a violator must make the credible threat with "the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family." Cal. Penal Code § 646.9(a); *People v. Falck*, 60 Cal. Rptr. 2d 624, 629 (Ct. App. 1997) (distinguishing the making of a credible threat from the "intent[] to place the victim in reasonable fear of his or her safety"); *Uecker*, 91 Cal. Rptr. 3d at 364 (same). "It is not necessary to prove that the defendant had the intent to actually carry out the threat." Cal. Penal Code § 646.9(g).

Orellana identifies no error at this step. Although the BIA did not analyze the statute extensively, the BIA

correctly identified the statute of conviction and its text. The BIA also relied on our nonprecedential disposition in *Raya-Moreno*, which thoroughly reviewed the elements. Thus, we find no error. *See Latter-Singh v. Holder*, 668 F.3d 1156, 1160 (9th Cir. 2012) (finding no error when "the BIA's analysis is terse and exhibits 'less than ideal clarity,'" yet enables the court to reasonably discern the agency's path).

## B. Comparison of § 646.9(a)'s Elements with the Federal Definition

We next compare the offense's elements with the federal definition of a CIMT to determine whether the offense is a categorical match. *Fugow*, 943 F.3d at 458. The INA does not define the term "crime involving moral turpitude." *Id.* at 457. We have observed that "'[m]oral turpitude' is perhaps the quintessential example of an ambiguous phrase." *Marmolejo-Campos*, 558 F.3d at 909. We have defined a CIMT as involving "either fraud or base, vile, and depraved conduct that shocks the public conscience." *Nunez v. Holder*, 594 F.3d 1124, 1131 (9th Cir. 2010) (internal quotation marks and brackets omitted), *superseded in other part as stated by, Betansos v. Barr*, 928 F.3d 1133, 1142 (9th Cir. 2019). We have also explained that "[CIMTs] generally involve some evil intent." *Castrijon-Garcia*, 704 F.3d at 1213 (citation and internal quotation marks omitted).

Notwithstanding our CIMT definition, we apply "traditional principles of administrative deference" when the BIA interprets an ambiguous INA phrase in its adjudication of a particular case. *Marmolejo-Campos*, 558 F.3d at 910–11. Here, the BIA relied on its precedential decision in *In re Ajami*, 22 I. & N. Dec. 949 (B.I.A. 1999) to conclude that a § 646.9(a) criminal stalking conviction is a CIMT. We consider what deference is due.

### 1.  No *Chevron* Deference is Due

*Chevron* deference does not apply here.  Although *Ajami* is a published BIA decision, that decision did not interpret 8 U.S.C. § 1227(a)(2)(A)(ii) as applied to a § 646.9(a) offense.   We do not accord *Chevron* deference in such circumstances.  *Compare Escobar v. Lynch*, 846 F.3d 1019, 1025 (9th Cir. 2017) ("Although the BIA's unpublished decision cites to published decisions, none interprets 8 U.S.C. § 1182(a)(2) as applied to California Penal Code section 136.1, and thus none directly controls."), *with Marmolejo-Campos*, 558 F.3d at 911–12 (according *Chevron* deference to an unpublished BIA decision that relied on a prior published BIA decision addressing whether the same Arizona statute was a CIMT).

### 2.  *Skidmore* Deference is Due

*Skidmore* deference may nevertheless apply.  "Pursuant to *Skidmore*, a reviewing court 'may properly resort' to an agency's interpretations and opinions 'for guidance,' as they constitute 'a body of experience and informed judgment.'" *Garcia v. Holder*, 659 F.3d 1261, 1266–67 (9th Cir. 2011) (quoting *Skidmore*, 323 U.S. at 140).   The measure of deference varies "depend[ing] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore*, 323 U.S. at 140.  The BIA's analysis here was not extensive.  That shortfall, however, does not preclude *Skidmore* deference.  An analysis of *Ajami* leads us to conclude that the BIA properly relied on that BIA decision to conclude that a § 646.9(a) offense is a CIMT.

In *Ajami*, the Michigan aggravated stalking offense at issue criminalized "the making of 1 or more credible threats

against the victim, a member of the victim's family, or another individual living in the victim's household." 22 I. & N. Dec. at 951 (quoting Mich. Comp. Laws Ann. § 750.411i(2)(c) (West 1996)). The statute defined "credible threat" as "a threat to kill another individual or a threat to inflict physical injury upon another individual that is made in any manner or in any context that causes the individual hearing or receiving the threat to reasonably fear for his or her safety or the safety of another individual." *Id.* (quoting Mich. Comp. Laws Ann. § 750.411i(1)(b)). Referring to the definition of stalking[6], the BIA observed that "[a] violator of the statute must act willfully, must embark on a course of conduct, as opposed to a single act, and must cause another to feel great fear." *Id*. at 952. Having previously held that "threatening behavior can be an element of a [CIMT]," the BIA determined that the offense was a CIMT because it involved "the intentional transmission of threats," thus "evidenc[ing] [ ] a vicious motive or a corrupt mind." *Id.*

Section 646.9(a) prohibits conduct that is materially identical to the aggravated criminal stalking offense in *Ajami*. Both offenses require: (1) a "willful" pattern of conduct, *compare* Cal. Penal Code § 646.9(a), (e)–(g), *with* Mich. Comp. Laws Ann. § 750.411i(1)(a), (e); and (2) a "credible threat," *compare* Cal. Penal Code § 646.9(a), *with* Mich. Comp. Laws Ann. § 750.411i(1)(b), (2)(c); that (3) causes the targeted person to "reasonably fear for his or her safety" or the safety of another individual, *compare* Cal.

---

[6] The Michigan statute defined "stalking" to mean "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested, and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." *Ajami*, 22 I. & N. Dec. at 951 (citing Mich. Comp. Laws Ann. § 750.411i(1)(e)).

Penal Code § 646.9(a), (g), *with* Mich. Comp. Laws Ann. § 750.411i(1)(b).  Thus, as in *Ajami*, a violator of the statute at issue here "must act willfully, must embark on a course of conduct, as opposed to a single act, and must cause another to feel great fear."[7]  22 I. & N. Dec. at 951.

Orellana argues, however, that § 646.9(a) is materially distinguishable from the aggravated stalking offense at issue in *Ajami*.  He argues first that § 646.9(a)'s statutory title does not include the word "aggravated" and it is therefore a materially different statute.  We disagree.  Although *Ajami* acknowledged that Michigan law differentiated between misdemeanor stalking and aggravated stalking, the feature that differentiated these offenses was the latter's "credible threat" element.  22 I. & N. Dec. at 951–52.  Like the aggravated criminal stalking offense in *Ajami*, § 646.9(a) contains a "credible threat" element.

Next, Orellana homes in on the "credible threat" element of the offense at issue in *Ajami*.  He observes that the Michigan offense defined "credible threat" to mean "a threat to kill another individual or a threat to inflict physical injury upon another[.]"  Mich. Comp. Laws Ann. § 750.411i(1)(b). By contrast, § 646.9(a) is not limited to these specific threats.  Cal. Penal Code § 646.9(g).  This difference, however, does not render *Ajami* inapposite.  Although *Ajami* noted the specific threats that the Michigan offense covered, *Ajami*'s CIMT determination did not turn on the type of threats made.  Indeed, *Ajami* observed that "[t]he threat of

---

[7] Orellana also claims error on the ground that § 646.9(a) does not use the phrase "great fear" or identify a requisite level of fear.  This claim rests on Orellana's mistaken understanding that the reference to "great fear" in *Ajami* was premised on statutory language requiring that level of fear.  The statute, however, did not include any such language.  Thus, there is no error on this ground.

violence, real or perceived, is almost always present in [stalking] cases; tragically, it is far from unheard of for a pattern of stalking to end in the stalker killing the stalked." 22 I. & N. Dec. at 952 (quoting *People v. White*, 536 N.W.2d 876, 883 (Mich. Ct. App. 1995)). Rather than focusing on the type of threats made, what made the criminal stalking offense at issue in *Ajami* morally turpitudinous was the "willful[]," "course of conduct" that "cause[d] another to feel great fear," combined with the "intentional transmission of threats," the latter of which evidenced a "vicious motive or [] corrupt mind." *Id.* As we have explained, § 646.9(a) mirrors these features. Thus, the BIA's reliance on *Ajami* to determine that a § 646.9(a) criminal stalking conviction constitutes a CIMT is entitled to *Skidmore* deference.

## C. Section 646.9(a) Does Not Reach Non-Turpitudinous Conduct

Although the BIA's decision is entitled to *Skidmore* deference, Orellana raises a more fundamental issue about § 646.9(a). He argues that § 646.9(a) reaches conduct that is not so "truly unconscionable" that it "surpasses the threshold of moral turpitude." *Robles-Urrea v. Holder*, 678 F.3d 702, 708 (9th Cir. 2012). In his view, a § 646.9(a) conviction "only requires a general threat," thus creating "doubt" about whether a § 646.9(a) conviction is a CIMT.

Doubt is not the standard that we apply to assess a claim that a criminal statute does not categorically constitute a CIMT. Orellana must establish that there is a "realistic probability" that § 646.9(a) applies to conduct that is not morally turpitudinous. *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). This "requires more than the application of legal imagination to a state statute's language." *Id.* Orellana can show a realistic probability in two ways. First, he can point to at least one other case in

which a state court applied the statute to non-turpitudinous conduct. *Chavez-Solis v. Lynch*, 803 F.3d 1004, 1009 (9th Cir. 2015). Second, he may rely on the statutory text alone. "[W]hen a state statute's greater breadth is evident from its text, a petitioner need not point to an actual case applying the statute of conviction in a nongeneric manner." *Id.* at 1010 (quotation marks omitted).

Orellana's argument implicates the second approach, and thus requires us to determine whether all the conduct that § 646.9(a) criminalizes is morally turpitudinous. When we have not previously considered whether the offense at issue is a CIMT, "our most useful guidance often comes from comparing the crime with others that we have previously deemed morally turpitudinous." *Nunez*, 594 F.3d at 1131. A comparison of three decisions with the statutory text of § 646.9(a) leads us to conclude that moral turpitude inheres in all the conduct that § 646.9(a) criminalizes.

We start with our decision in *Fernandez-Ruiz v. Gonzales*, 468 F.3d 1159 (9th Cir. 2006). There, we considered whether two misdemeanor domestic assault convictions pursuant to Arizona law categorically constituted CIMTs. *Id.* at 1161. We concluded that the statute of conviction was not a CIMT because (1) it did not require a willful or intentional act, which "alone" rendered the offense not a categorical match, *id.* at 1166–67, and (2) it contained no element of injury at all, *id.* at 1167. We summarized that "[a] simple assault statute which permits a conviction for acts of recklessness, or for *mere threats*, or for conduct that causes *only the most minor or insignificant injury* is not limited in scope to crimes of moral turpitude." *Id.* (emphasis added). Similarly, in *Uppal*, we concluded that an aggravated assault offense pursuant to Canadian law did not constitute a CIMT because the offense required no

actual injury and no intent to inflict bodily injury. 605 F.3d at 716.

Our decision in *Latter-Singh v. Holder*, 668 F.3d 1156 (9th Cir. 2012), stands in stark contrast to our analysis in *Fernandez-Ruiz* and *Uppal*. In *Latter-Singh*, we held that a California Penal Code § 422 offense, which criminalized threats to commit a crime that would result in the death or great bodily injury to another person if carried out, categorically constituted a CIMT. *Id.* at 1163. We explained that § 422 criminalized:

> (1) willfully threatening to commit a crime that will result in death or great bodily injury to another person; (2) specific intent that the statement be taken as a threat; (3) the threat was "on its face and under the circumstances so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat"; (4) the threat "caused the victim to be in sustained fear for his or her own safety or for his or her immediate family's safety"; and (5) the "victim's fear was reasonable under the circumstances."

*Id.* at 1160 (quoting *People v. Jackson*, 100 Cal. Rptr. 3d 539, 543 (Ct. App. 2009)).

We proffered three independent reasons for why the offense was a CIMT. First, we explained that "the underlying conduct threatened is itself a [CIMT]," and a § 422 conviction "require[d] both proof of the specific intent to injure required of [CIMTs] as well as proof of a threat of death or serious bodily injury made with the specific intent

that the victim believe the threat will be carried out." *Id.* at 1161–62 (internal quotation marks and original alteration omitted). Second, we determined that the statute "criminalize[d] only that conduct which results in substantial harm," specifically noting "that the person threatened [must] be in *sustained fear or immediate danger to his or his family's safety*." *Id.* at 1162 (emphasis added). Finally, we underscored that the statutory *mens rea* "constitute[d] the evil intent" necessary for a CIMT, which, in that case, was "[t]he intent to instill great fear of serious bodily injury or death in another[.]" *Id.* at 1163.

Although we recognize that § 646.9(a) is not identical to the § 422 threat offense that we considered in *Latter-Singh*, we conclude that § 646.9(a) is more like that statute than the statutes that we considered in *Fernandez-Ruiz* and *Uppal*.

Enacted in 1990, § 646.9 was the nation's first criminal stalking statute. *People v. Carron*, 44 Cal. Rptr. 2d 328, 332 (Ct. App. 1995).**[8]** The California Legislature enacted the statute as a response to the shooting of an actress and the murders of four Southern California women within a month and a half, each of whom had obtained restraining orders and communicated to their families that they believed they were going to be killed. *Id.* "Existing criminal statutes were inadequate," including § 422. *Id.* (noting that "[s]ection 422 required an 'unequivocal, unconditional, immediate' threat of death or great bodily injury"). Although § 646.9 contained the words "death or great bodily injury," as

---

**[8]** Nearly all states followed suit with California and enacted criminal stalking statutes. *See* Note, Robert N. Miller, *"Stalk Talk": A First Look at Anti-Stalking Legislation*, 50 WASH. & LEE L. REV. 1303, 1303 & n.7 (1993) (explaining that 48 states, including Michigan, enacted criminal antistalking statutes in the wake of California's statute).

originally enacted, the California Legislature removed these words in 1993 to "strengthen[]" the statute by focusing on "a threat to a person's safety." *Id.* at 333.

Orellana implicitly recognizes that if the statute were still limited to threats of death or great bodily injury, then the statute would categorically be a CIMT. *Latter-Singh* would compel that conclusion. We do not think, however, that the absence of "death or great bodily injury" from § 646.9(a) means that the statute criminalizes non-turpitudinous conduct, such as mere threats.

Although § 646.9(a) is not limited to threats of death or great bodily injury, it has material similarities with the statute in *Latter-Singh*. Like the statute in *Latter-Singh*, § 646.9(a) "does not punish mere angry or emotional speech," *People v. Halgren*, 61 Cal. Rptr. 2d 176, 180 (Ct. App. 1996), nor does it "encompass every kind of threat," *People v. Borrelli*, 91 Cal. Rptr. 2d 851, 861 (Ct. App. 2000). *See Latter-Singh*, 668 F.3d at 1162 (observing that § 422 does not criminalize "emotional outbursts or mere angry utterances or ranting soliloquies, however violent, but rather proscribes a narrow category of speech that instills fear in others" (citations, internal quotation marks and internal alterations omitted)).

Instead, § 646.9(a) criminalizes only "true threats," which means threats that are "unambiguous and have such immediacy that they convincingly express an intention of being carried out." *Falck*, 60 Cal. Rptr. 2d at 629. That conclusion follows from § 646.9(a)'s elements which, when read together, "limit[] its application to only such threats as pose a danger to society[.]" *Id.* at 630. Like the statute in *Latter-Singh*, § 646.9(a) proscribes only "credible threat[s]" that cause the targeted individual to "*reasonably* fear for his or her *safety*" or his or her family's safety, those made with

"the *apparent ability* to carry out the threat," and those which the perpetrator specifically intends to cause such fear in the targeted person.    Cal. Penal Code § 646.9(g) (emphasis added); *see also Latter-Singh*, 668 F.3d at 1162 (distinguishing *Fernandez-Ruiz* as lacking "a similar requirement that the person threatened be in *sustained* fear of immediate danger to his or his family's *safety*." (emphasis in original)).    This conduct is more like the conduct proscribed by the § 422 threat offense that we deemed to be categorically a CIMT in *Latter-Singh* than the conduct proscribed by the simple assault offenses in *Fernandez-Ruiz* and *Uppal*.

Further, "[t]he BIA has emphasized that 'evil or malicious intent is . . . the essence of moral turpitude,' and, therefore, one test 'to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or a corrupt mind.'" *Latter-Singh*, 668 F.3d at 1161 (second alteration in original) (quoting *In re Flores*, 17 I. & N. Dec. 225, 227 (B.I.A. 1980); then quoting *Ajami*, 22 I. & N. Dec. at 950).  We have affirmed that "[t]he BIA is entitled to place *great weight* on the presence or absence of a *mens rea* element when determining whether a crime involves moral turpitude." *Id.* at 1162 (emphasis added); *see also Castrijon-Garcia*, 704 F.3d at 1213.  Although § 646.9(a) may not expressly require the threat of death or bodily injury, the BIA was entitled to place greater emphasis on the evil intent or corrupt mind that § 646.9(a) requires to conclude that the statute proscribes conduct that is categorically morally turpitudinous.

Pursuant to our review of the statutory text and in light of our CIMT precedents, we conclude that § 646.9(a) does not "plainly and specifically criminalize[] conduct outside the contours of the federal definition" of a CIMT.  *Cerezo v.*

*Mukasey*, 512 F.3d 1163, 1167 (9th Cir. 2008). By extension, we conclude that a § 646.9(a) conviction is categorically a CIMT.

## II. The BIA Reasonably Concluded that Orellana's Two § 646.9(a) Counts of Conviction Do Not Arise Out of a Single Scheme of Criminal Misconduct

To be removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii), Orellana's two counts of conviction must also "not aris[e] out of a single scheme of criminal misconduct." 8 U.S.C. § 1227(a)(2)(A)(ii). The INA does not define "single scheme of criminal misconduct." *Szonyi v. Barr*, 942 F.3d 874, 892 (9th Cir. 2019). We conclude that the BIA's interpretation of this phrase here was reasonable for two reasons.

First, the BIA's determination accords with its precedential decision in *Matter of Adetiba*, 20 I. & N. Dec. 506, 509 (B.I.A. 1992), to which we accord *Chevron* deference. *Szonyi*, 942 F.3d at 890. In *Adetiba*, the BIA construed the phase to mean that an alien is removable "when an alien has performed an act, which, in and of itself, constitutes a complete, individual, and distinct crime, . . . even though one may closely follow the other, be similar in character, and even be part of an overall plan of criminal misconduct." 20 I. & N. Dec. at 509. Applying that construction, the BIA determined that the alien there had committed "separate and distinct crimes *each time* he used a *different* credit card and obtained through its unauthorized use" something of value. *Id.* at 512 (emphasis added). The BIA reasoned that "[t]he use of additional cards did not flow from and was not a natural consequence of a single act of criminal misconduct," noting that "[a]fter use of any one credit card, the alien had the opportunity to dissociate

himself from his enterprise and reflect on what he had done." *Id.*

Here, the BIA relied in part on *Adetiba* to conclude that Orellana was convicted of two CIMTs not arising out of a single scheme of criminal misconduct.[9] Count 1 of the state felony complaint involved Orellana willfully and maliciously following and harassing one person between June 1, 2015 and April 26, 2017. Count 2 involved the same conduct by Orellana against a different person between March 1, 2017 and April 26, 2017. Relying on *Adetiba*, the BIA concluded that Orellana's criminal offenses, which occurred on different dates over different periods of time, did not arise out of a single scheme. That was not a misapplication of *Adetiba*. And, like the offenses at issue in *Adetiba*, Orellana's stalking in Count 1 was not a natural consequence of Orellana's stalking of a different person in Count 2. 20 I. & N. Dec. at 512. He had the opportunity to dissociate himself from stalking the first person before stalking the second. Thus, the BIA reasonably determined that Orellana's two § 646.9(a) counts of conviction did not arise out of single scheme of criminal misconduct pursuant to *Adetiba*.

The BIA also relied in part on our decision in *Leon-Hernandez v. U.S. I.N.S.*, 926 F.2d 902 (9th Cir. 1991) to conclude that Orellana's two counts of conviction did not arise out of a single scheme. In *Leon-Hernandez*, we observed that the then-applicable statutory text provided that "[a]n alien may be deported if 'convicted of two crimes . . .

---

[9] Orellana objects that the Government misstated *Adetiba* in its briefing during removal proceedings. Our review, however, is of the BIA's decision, not the Government's briefing before the BIA. *See* 8 U.S.C. § 1252.

*regardless of whether the convictions were in a single trial.*'" *Id.* at 904 (quoting 8 U.S.C. § 1251(a)(4) (1988)) (emphasis and ellipsis in original). That text remains in the provision. 8 U.S.C. § 1227(a)(2)(A)(ii). The BIA properly recognized that Orellana's simultaneous convictions did not render the statute inapplicable.

*Leon-Hernandez* recognized a rebuttable "presumption of separate crimes created by the fact that the crimes were committed on different dates[.]" 926 F.2d at 905 (citing *Khan v. Barber*, 253 F.2d 547, 549 (9th Cir. 1958), *cert. denied*, 357 U.S. 920 (1958)). Because this presumption applies "[i]n the absence of evidence of a more conscious, coherent plan or program of future action, the BIA's determination that [the alien's] crimes did not arise from a single scheme of criminal misconduct is reasonable." *Id.* (citation and internal quotation marks omitted). The evidence before the BIA presumptively showed that Orellana's two § 646.9(a) counts of conviction did not arise out of a single scheme because they occurred on different dates. Orellana never argued to the BIA that his counts arose out of a coherent plan or program, nor has he raised that argument here. We therefore have no basis to consider that issue. *Barron v. Ashcroft*, 358 F.3d 674, 677–78 (9th Cir. 2004) (holding that an appellate court lacks jurisdiction to review issues not raised to the BIA). Accordingly, we uphold the BIA's determination that Orellana's two § 646.9(a) counts of conviction did not arise out of single scheme of criminal misconduct for the additional reason that the conclusion aligns with our precedent.

## CONCLUSION

We hold that a conviction for criminal stalking in violation of California Penal Code § 646.9(a) is categorically a CIMT. The BIA therefore did not err in

concluding that a § 646.9(a) conviction is a CIMT. Furthermore, the BIA reasonably concluded that Orellana's conviction for two CIMTs did not arise out of a single scheme of criminal misconduct. Accordingly, Orellana is removable as charged pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii).

**PETITION DENIED.**

---

OWENS, Circuit Judge, concurring:

"Dumb, dumb, dumb!" my Grandpa Harold would exclaim when I tried to explain a legal concept that made little sense. I can only imagine what he would say about the "CIMT" approach that case law currently compels us to apply.

I do not have to imagine what other judges have said about this approach. Like me, they think it is dumb, dumb, dumb. *See, e.g.*, *Romo v. Barr*, 933 F.3d 1191, 1199–1200 (9th Cir. 2019) (Owens, J., concurring) (listing cases where judges from various circuits have criticized CIMT jurisprudence).

We should avoid doing dumb things. Especially ones that are dumb[3].

A smarter (and more just) approach would be to "look to a more objective standard, such as the length of the underlying sentence, before deciding if someone should be removed from our country." *Almanza-Arenas v. Lynch*, 815 F.3d 469, 482–83 (9th Cir. 2016) (en banc) (Owens, J., concurring, joined by Tallman, Bybee, and Callahan).

Nevertheless, duty sometimes demands the dumb thing, so I join the majority opinion in full because it correctly applies the law as it now stands.